The City of Aurora et al. *v.* West et al.

---

THE CITY OF AURORA *et al. v.* WEST *et al.*

PROMISSORY NOTES—MERCANTILE PAPER.—An instrument of writing in the form following is, in legal effect, a promissory note, and governed by the law merchant:

No. 1.      UNITED STATES OF AMERICA.      No. 1.
STATE OF INDIANA, $1,000.        CITY OF AURORA, $1,000.
        *Ohio and Mississippi Railroad Company.*

The City of *Aurora* acknowledges itself indebted to the *Ohio and Mississippi Railroad Company,* or bearer, in the sum of 1,000 dollars, negotiable and payable at the *North River Bank,* in the City of *New York,* twenty-five years from date hereof, upon the presentation and delivery of this certificate, bearing an interest of six per cent. per annum, payable annually on the first day of *January* at said bank, in the City of *New York,* upon presentation and delivery of the proper coupon hereto attached, signed by the clerk of said city; and at all times the holder shall have a lien on the stock of said city in said company, for which this is received in payment, and may exchange the same for a like amount of said stock at any time before the first declaration of cash dividends, and be substituted as stockholder in place of said city, upon surrender of this bond. This bond is issued in part payment of a subscription of 50,000 dollars by the said city of *Aurora* to the capital stock of

The City of Aurora et al. *v.* West et al.

the *Ohio and Mississippi Railroad Company*, by order of the Common Council of the city of *Aurora*, on the 28th of *September*, 1850; in pursuance of the eighteenth section of an act granting to the citizens of the town of *Aurora*, in the county of *Dearborn*, a city charter, passed by the General Assembly of the State of *Indiana*, and approved *February* 14th, 1848. Witness the seal of said city of *Aurora*, and the signature of the mayor and clerk of said city, the first day of *January*, 1852. SOLOMON P. TUMEY,

Mayor of the city of *Aurora, Indiana.*

WILL. W. CONWAY, Clerk of the city of *Aurora, Indiana.* [SEAL.]

No. 1. *Ohio and Mississippi Railroad subscription.* $50,000

City of *Aurora, Indiana*, will pay the bearer 60 dollars, at the *North River Bank*, in the city of *New York*, on the first day of *January*, 1858, being annual interest on bond No. 1.

$60.00. WILL. W. CONWAY, Clerk.

SAME—BONA FIDE HOLDER.—Mercantile paper made void *ab initio*, by statute, is void in the hands of a *bona fide* holder.

CITY—POWER TO SUBSCRIBE STOCK, AND ISSUE BONDS TO A RAILROAD. COMPANY.—A municipal corporation can not, without special authority, subscribe stock and issue bonds in payment of it, in a railroad corporation. But such authority may be conferred upon a city, when it is expedient; and when it is given, by statute, in any case, it must be executed as prescribed in the grant, if executed at all. The terms of the grant can not be legally departed from or exceeded.

SAME—BONDS—NOTICE OF POWER.—When bonds, issued by a municipal corporation, bear a reference upon their face to the authority under which they are issued, all persons are bound to take notice of the extent of the powers of the agent who issued them.

RAILROADS—TERMINUS.—A railroad running through, is a railroad running to a city; and if a city is authorized to subscribe stock to a railroad running to it, and it is not made a point in the charter of such road, it can only be made so by subsequent action of the directors of the railroad corporation, and until such action has been

had, no absolute subscription of stock in such corporation can be made by such city.

SAME—NOTICE.—A railroad corporation, as well as its directors, is chargeable with notice of the time, place, and manner of the location of its road.

PRACTICE IN SUPREME COURT.—A cause will not be reversed, in this Court, for the error of permitting a question to be put and answered, where the answer is harmless; nor where, though not harmless, no motion for a new trial, on account of the error, was interposed.

APPEAL from the *Dearborn* Circuit Court.

PERKINS, J.—This suit was brought in the Court below by *West* and *Torrence*, to recover the amount due on the coupons falling due in 1858, '59, '60, '61, attached to fifty bonds of 1,000 dollars each, issued by the city of *Aurora* in payment of the stock of the *Ohio and Mississippi Railroad Company*, which the mayor of the city had subscribed. The bonds bear date the first day of *January*, 1852, but they were not actually issued till about the first of *June*, 1853, some eighteen months after they bear date.

The following is a copy of one of the bonds and one of the coupons:

No. 1.        UNITED STATES OF AMERICA.        No. 1.
STATE OF INDIANA, $1,000.            CITY OF AURORA, $1,000.
             *Ohio and Mississippi Railroad Company.*

The city of *Aurora* acknowledges itself indebted to the *Ohio and Mississippi Railroad Company*, or bearer, in the sum of 1,000 dollars, negotiable and payable at the *North River Bank*, in the city of *New York*, twenty-five years from date hereof, upon the presentation and delivery of this certificate, bearing an interest of six per cent. per annum, payable annually on the first day of *January*, at said bank, in the city of *New York*, upon presentation and delivery of the proper coupon hereto attached, signed by the clerk of said city; and at

all times the holder shall have a lien on the stock of said city in said company, for which this is received in payment, and may exchange the same for a like amount of said stock at any time before the first declaration of cash dividends, and be substituted as stockholder in place of said city, upon surrender of this bond. This bond is issued in part payment of a subscription of 50,000 dollars by the said city of *Aurora* to the capital stock of the *Ohio and Mississippi Railroad Company*, by order of the common council of the city of *Aurora*, on the 28th of *September*, 1850, in pursuance of the eighteenth section of an act granting to the citizens of the town of *Aurora*, in the county of *Dearborn*, a city charter, passed by the General Assembly of the State of *Indiana*, and approved *February* 14th, 1848.

Witness the seal of said city of *Aurora*, and the signature [SEAL.] of the mayor and clerk of said city, this first day of · *January*, 1852.   SOLOMON P. TUMEY,
  Mayor of the City of *Aurora, Indiana.*
WILL. W. CONWAY, Clerk of the City of *Aurora, Indiana.*

The following is a copy of one of the coupons:

No. 1.   OHIO AND MISSISSIPPI RAILROAD SUBSCRIPTION.   $50,000.

City of *Aurora, Indiana*, will pay the bearer 60 dollars, at the *North River Bank*, in the City of *New York*, on the first day of *January*, 1858, being annual interest on bond No. 1. $60.00.   WILL. W. CONWAY, Clerk.

These bonds purport to be issued under the eighteenth section of the city charter of the City of *Aurora*.

That section is in these words:

" The said City Council, whenever a majority of the qualified voters of said city require it, shall have power, and they are hereby authorized to take stock in any chartered company for making roads to said city, or for watering or light-

ing said city; *Provided,* that no such stock shall be subscribed
on the part of the city until a majority of the qualified voters
thereof have signified their assent thereto by expressing upon
their ticket at any annual election, that they are in favor of
the subscription for such stock by the city council; and to
raise funds for the payment of such stock the said city coun-
cil shall have power and authority to make and sell their
bonds under the seal of said corporation, payable in such time
as they may deem proper and expedient, and bearing interest
at the rate of six per cent. per annum, payable annually, and
therein pledge to the holder of such bonds that the stock so
taken, with all the dividends thereon accruing, shall be held
and firmly bound for the payment of said bonds and accruing
interest on the same, and that the interest coupons attached
to said bonds shall be received at all times when due, for the
payment of all taxes due to said city; the amount of stock
subscribed in any one chartered company not to exceed 50,000
dollars."

The city officers having subscribed for 50,000 dollars of the
capital stock of the company in *September,* 1850, they did, in
*June,* 1853, issue these bonds.   They were not sold in the
market, or in any way to raise money for the payment of the
stock, but they were, on or about the 3d day of *June,* deliv-
ered by the city officers to the *Ohio and Mississippi Railroad
Company,* in payment of the subscription.   The stock was
not issued to the city until long afterwards.   It was, when
issued, in such form that it was afterwards returned to the
*Ohio and Mississippi Railroad Company,* and cancelled, and no
stock has since been issued to the city.

Among the grounds of defence relied on by the city of
*Aurora* was this: "that the *Ohio and Mississippi Railroad
Company* was not a chartered company for making a road, or
roads, to said city of *Aurora,* or for doing any other act or
thing touching said city, or for the promotion of the local

interest thereof; and the said defendants and the city of *Aurora*, aforesaid, specially aver that on the ―― day of *September*, 1850, when the said subscription was made by the said city council of the city of *Aurora* for 50,000 dollars of the capital stock of said *Ohio and Mississippi Railroad Company*, the road of said company, that is to say the *Ohio and Mississippi Railroad*, was not located to or through said city, and the said *Ohio and Mississippi Railroad Company* was not on the ―― day of *September*, 1850, the day upon which said subscription was made, constructing, nor had said company at any time before that day been engaged in the construction of a railroad, or any other road to, or through, or from the said city of *Aurora*, nor was the said company required by their act of incorporation to construct a road to, through, or from said city;" all of which was well known to *Charles W. West*, one of the plaintiffs, who was then, had been before, and continued afterwards to be a member of the board of directors of said *Ohio and Mississippi Railroad Company*.

On the trial the Court charged the jury, among other things, as follows:

"If you believe from the evidence that the plaintiffs' purchased the bonds from the railroad company in good faith, and paid a valuable consideration, and without any knowledge on their part of the city of *Aurora* having any objections to the payment of said bonds, or having objections to the manner in which the city of *Aurora* made said bonds, you should find for the plaintiff."

This was excepted to.

It appeared in evidence that the plaintiff, *West,* was a director and active member of the corporation, as alleged in the paragraph of the answer above quoted.

There was judgment below against the city. In examining the case we may first properly ascertain the character of these corporation bonds.

They are, in legal effect, the promissory notes of the city. It is true, they are under seal, and would not, by strict common law rules, come within the definition of promissory notes; but they are now treated as such. If they had been issued, payable generally, they might not have been governed by the law-merchant in this State. Only bills of exchange, and such notes as are payable at a bank in this State are, by the law of this State, governed by the *lex mercatoria.* 1 Blackf. 81; 13 Ind. 521.

But the bonds or notes in question are payable in *New York;* they are, therefore, as against the maker of them, *New York* contracts; they are governed by the law of *New York.*

This principal of law was settled in *England,* by the case of *Robinson* v. *Bland,* in 1760, 1 Wm. Black. Rep. 234, 256; S. C. 2 Burr. 1077. In that case *Sir John Bland* drew a bill at *Paris* upon himself, payable in *England,* for money lost at play in *Paris.* It was, in legal effect, his promissory note, executed in *Paris* but payable in *England.* Suit was instituted on the bill in *England.* The question was whether the law of *France* or *England* was to determine the character of the paper. The case was twice argued. On the first argument, *Dennison, J.,* said: "This case and the law upon it are quite new to me. I can form no opinion upon it."

On the second argument, *Lord Mansfield* said: "The general rule established *ex comitate et jure gentium* is, that the place where the contract is made, and not where the action is brought, is to be considered in expounding and enforcing the contract. But this rule admits of an exception, where the parties (at the time of making the contract) had a view to a different kingdom. *Huberus* says, Prœl. 1, tit. 3, p. 34, contracts are to be considered according to the place wherein they are to be executed. As, therefore, the bill in the present case is made payable in *England,* it is entirely an English transaction, and to be governed by the local law. *Dennison,*

*J.,* said : "It is a plain case and must be ruled by the laws of *England.*" *Wilmot, J.,* said : "The place where the money is to be paid must guide the law. It is determined as to usurious contracts in *Ireland.* Pr. Chanc. 128. Clearly, therefore, the law of *England* must be the rule, as the money was made payable here." To the same effect in *Indiana. The State Bank* v. *Bowers,* 8 Blackf. 72; *Hunt* v. *Standart,* 15 Ind. 33; *Rose et al.* v. *The Park Bank,* 20 Ind. 94; *Butler* v. *Myer,* 17 Ind. 77.

By the law of *New York,* bonds like those in suit are governed by the law-merchant. This is shown by the statute of *New York* set out in the record, and the decisions of her courts. *Gould* v. *The Town of Sterling,* 10 Am. L. Reg., and note 2; S. C., 23 N. Y. Court of App. 439, 464; *Bank of Rome* v. *The Village of Rome,* 19 N. Y. Court of App. 20. See 19 Ind. R. p. 93.

Being mercantile paper, the next question is to what defences is it subject? As a general proposition, it may be laid down that mercantile paper, made void *ab initio,* by statute, is void in the hands of a *bona fide* holder. Story on Bills, § 189. So, such paper, as a general proposition, we take it, can not be enforced, even by a *bona fide* holder, against infants, lunatics, married women, and alien enemies, they not having capacity to bind themselves by such contracts. Story on Bills, § 81 *et seq.* So, it has been held, that where a corporation issued commercial paper, not apparently within the scope of its powers, such paper was void in the hands of a *bona fide* holder, if there could be such. *Smead* v. *The Indianapolis, &c. Co.,* 11 Ind. 104; *Starin* v. *Town of Genoa,* 23 N, Y. Rep. 450; *Gould* v. *The Town of Sterling, id.* 459. See, also, 14 Cal. Rep. 367; 16 *id.* 626; 18 *id.* 613; 20 *id.* 103. See *Moran* v. *Commissioners of Miami Co.,* 2 Black, (U. S.) Rep. 722. But we need not now express an opinion on this point, for the plaintiffs in the case at bar were not, as will

appear further on, *bona fide* holders of the bonds in suit; so that if these bonds were irregularly issued, the plaintiffs were chargeable with notice thereof. *Aurora* was and is a municipal corporation, and therefore, on general principles of law, could not, without special authority, subscribe stock and issue bonds in payment of it, in a railroad corporation. Grant on Corp. pp. 60, 276, (side pages.) But such authority is proper to be conferred upon a city where it is expedient. And where such special authority is given, by statute, in any case, it must be executed as prescribed in the grant, if executed at all. The terms and conditions of the grant can not legally be departed from or exceeded. In the case of the city of *Aurora* a special authority was given to her, by the section of the charter above quoted, to take stock in a railroad, running to the city, upon a vote of a majority of her qualified voters. The power of the city, then, to take railroad stock, &c., was granted subject to two conditions precedent, viz : the existence of a road running to the city, and a vote, expressed, &c., of a majority of her qualified voters. The bonds in suit bore a reference upon their faces to the authority under which they were issued, and thus put all persons on inquiry as to the extent of the powers of the agent issuing them.

*Aurora*, then, might take a certain amount of stock and issue bonds, &c., to a certain amount, in and for a railroad running to that municipal corporation, after a vote, &c.

A railroad running through would be a railroad running to the city. *The City of Aurora* v. *West et al.*, 9 Ind. 74; *Von Hostrup et al.* v. *The City of Madison*, Dec. Term Sup. Court U. S. 1863.

That city did, in fact, take stock in the *Ohio and Mississippi Railroad Company*, and issue bonds in payment of it. Some of those bonds passed into the hands of the plaintiffs below in this suit. And the questions arise, was the *Ohio and Mississippi Railroad Company* a railroad running to *Aurora ?*

The City of Aurora et al. *v.* West et al.

Was the stock taken after a vote as prescribed by the charter? A determination of the city council that such a vote had been taken would probably be sufficient evidence of that fact, at least, to constitute a *prima facie bona fide* purchaser in a given case. *The Evansville, &c. Railroad Company* v. *The City of Evansville*, 15 Ind. p. 395. In this case, however, it may be questioned whether the city council ever passed upon the point. A majority of those voting may not be a majority of the votes; but we pass this point, and proceed to the other inquiry above propounded, viz: was the *Ohio, &c., Railroad*, a road running to *Aurora?* How is this inquiry to be determined? If *Aurora* had been made a point in the charter of the company, that fact would have been an answer to the question; but it was not. Hence, it could only have been made a road running to *Aurora* by subsequent action of the directors of the corporation; and, till such action had been had, no absolute subscription of stock in the corporation could have been made by the city. Now, the directors of the *Ohio and Mississippi Railroad Company* are constituted, by the charter, the corporation; and the fact appears that, from its origin till after the subscription by *Aurora, West*, one of the plaintiffs, and a partner of the other, was one of the acting directors of the *Ohio, &c. Company*, and thus a part of the corporation; and such a corporation must be chargeable with knowledge of its line of road; hence, in point of law, was necessarily chargeable with notice of the time, place and manner of the location of the road. See *Aspinwall et al.* v. *Ohio, &c. Company*, 20 Ind. Rep. 492.

In view of this fact, then, that the plaintiffs must be charged with notice, on the question of location, the instruction given by the Court, above quoted, is erroneous, and may have controlled the verdict in the cause. That instruction is erroneous on two grounds:

1. It goes upon the hypothesis that the bonds may have

The City of Aurora et al. *v.* West et al.

been illegally issued, and the plaintiffs *bona fide* holders of them, even though that illegality consisted in issuing the bonds for stock subscribed in a road not running to *Aurora*.

2. It goes upon the hypothesis that the bonds might have been void for illegality of issue, and that fact known to the plaintiffs, and yet the plaintiffs be entitled to recover if they did not know that the people of the city were objecting on that ground.

This instruction was calculated to mislead the jury. The people would be presumed to be objecting.

A point is made as to an error of the Court in allowing an illegal question to be propounded to a witness. Whether the answer to such question should be excepted to as well as the question, to save the error for review in the Supreme Court, we do not decide; but we do decide, that the Supreme Court will not reverse for the error of permitting such question to be put and answered, where the answer is harmless; nor where, though not harmless, no motion for a new trial on account of the error, was interposed. See *The City of Aurora* v. *Cobb et al.*, 21 Ind. p. 492.

In the case of *Culbertson* v. *Stanley*, 6 Blackf. 67, *Sullivan, J.*, says: " Nor is it error that the Court erroneously overruled an objection to a leading question, unless the record show that the opposite party was injured by the answer of the witness." See also 13 Ind. 377: " If the *witness* did not give the answer it was the design of the plaintiff to draw from him, the defendant has no reason to complain."

*Per Curiam.*—The judgment below is reversed, with costs. Cause remanded, &c.

*Holman & Haynes, Jer. Sullivan* and *T. D. Lincoln,* for the appellants.

*A. Brower,* for the appellees.