### ILLINOIS CENT. R. CO. v. A. WALLER & CO.

(Circuit Court, W. D. Kentucky. October 12, 1908.)

1. REMOVAL OF CAUSES — PARTY ENTITLED TO REMOVE — EFFECT OF COUNTERCLAIM.

    A plaintiff in a suit in a state court for the recovery of a sum less than $2,000 does not become theoretically or constructively a defendant, so as to entitle him to remove the cause on the ground of diversity of citizenship, because the defendant in his answer sets up a counterclaim for more than $2,000, as permitted by the statute of the state, and which counterclaim under such statute would remain for trial, although the plaintiff should dismiss his action.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 88.]

2. SAME—CONSTRUCTION OF STATUTE—"DEFENDANT."

    Where words in a statute have acquired through judicial interpretation a well-understood meaning, it is assumed that such meaning was intended in subsequent statutes on the same subject; and the word "defendant," as used in the earlier removal acts, having been construed by the Supreme Court to include only a party who was a defendant on the record in the state court, it must be given the same construction as used in Act March 3, 1875, c. 137, § 2, 18 Stat. 470, as amended by Act March 3, 1887, c. 373, § 1, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 509), which limits the right of removal to the "defendant or defendants."

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 88.

    For other definitions, see Words and Phrases, vol. 2, pp. 1936–1938.]

On Motion to Remand to State Court.

Trabue, Doolan & Cox, for plaintiff.
Clay & Clay, for defendants.

EVANS, District Judge. The plaintiff, the railroad company, brought this action against the defendants in the state court to recover $66 alleged to be owing for freight cars furnished to defendants for the transportation of merchandise. The defendants filed an answer wherein, among other matters, they pleaded a counterclaim for $3,000 for damages resulting from an alleged breach of a contract respecting the furnishing of cars. In due season the plaintiff filed its petition and bond, and removed the case to this court upon the ground of diverse citizenship alone, and the defendants have moved to remand it to the state court.

The single question involved has been ably argued, and the court has given much time to its consideration. As already pointed out, the claim of the plaintiff is for $66, and the amount in controversy reached a sum exceeding $2,000 when the defendants in their answer pleaded their counterclaim, and not before. The defendants are citizens of Kentucky, and therefore would not, in any event, have the right to remove the case. The plaintiff is a citizen of Illinois, and, having itself brought the action in the state court, could not remove it unless the pleading by the defendants of their counterclaim for $3,000 per se brought the case within the removal statute as being, in effect, the institution of a new and independent suit by the defendants as plaintiffs against the railroad company as defendant.

Upon the question thus raised the decisions of the courts are in direct conflict. Removals in similar cases have been upheld in carefully considered opinions by Judge Trieber in Price & Hart v. T. J. Ellis Co. (C. C.) 129 Fed. 482, by Judge Hawley in Walcott v. Watson (C. C.) 46 Fed. 529 (where, however, the removal was under the local prejudice clause), by Judge Thayer in Carson & Rand Lumber Co. v. Holtzclaw (C. C.) 39 Fed. 578, and by Judge Blatchford in Clarkson v. Manson (C. C.) 4 Fed. 257. On the contrary, the right to remove has been quite as explicitly denied in equally able opinions by the Circuit Court of Appeals of the Fifth Circuit in Waco Hardware Co. v. Michigan Stove Co., 91 Fed. 289, 33 C. C. A. 511, by Judge Jenkins in La Montague v. T. W. Harvey Lumber Co. (C. C.) 44 Fed. 645, by Judge Rogers in McKown v. Kansas & T. Coal Co. (C. C.) 105 Fed. 657, and by Judge Treat in Falls Wire Co. v. Broderick (C. C.) 6 Fed. 654. This court, in 1905, in the case of McClellan v. Troendle, ruled in accordance with the views expressed in the last-named cases in an unreported opinion; but as it would not hesitate to retract that opinion, if convinced of its incorrectness, it has very fully re-examined the question in all its bearings. As will be observed, we have not included in either list of cases West v. City of Aurora, 6 Wall. 139, 18 L. Ed. 819, which was quoted in nearly or quite all of the opinions referred to, but it will be particularly examined further along.

The learned counsel for the railroad company, in support of the right of removal, not only relies upon the line of authorities we first noted, and especially upon the case of Price & Hart v. T. J. Ellis Co. (C. C.) 129 Fed. 482, but urges, first, that, as its claim was only for $66, the plaintiff was bound to sue in the state court, and should not be charged with the results of any voluntary choice of tribunals, because it had no option in the selection of a court; and, second, that when the counterclaim for $3,000 was filed the plaintiff at once became the defendant in a new action in which there is a controversy involving a sum or value exceeding $2,000, and this contention is fully sustained by the authorities cited in its support. But as an equal weight of authority, to say the least, is found upon the other side, including a ruling by the Circuit Court of Appeals of the Fifth Circuit, some further examination may not be inappropriate.

Looking at the language of the statute, apart from the decided cases, we find that the only ground for removal applicable to such a case is

diversity of citizenship—a ground for removal which is made available to a "defendant or defendants" only, and not to them except when an amount exceeding $2,000 is in dispute. Those provisions are embraced in sections 1, 2, and 3 of the judiciary act of 1887 (Act March 3, 1887, c. 373, 24 Stat. 552, as amended by Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, pp. 508–510]), which, in substance, provide that the Circuit Courts of the United States, concurrently with the courts of the several states, shall have jurisdiction of all suits of a civil nature where the matter in dispute, exclusive of interest and costs, shall exceed the sum or value of $2,000, and wherein there shall be a controversy between citizens of different states, and that such an action, if brought in a state court, may be removed "by the defendant or defendants therein, being nonresidents" of the state, to the Circuit Court of the United States for the proper district, upon filing a petition and giving bond at any time before the defendant is required to answer in the case under the law and practice of the state. Whether the actual plaintiff in the suit can be transmuted into a defendant, within the meaning of the statute, by the filing of an answer and counterclaim under the Kentucky Code of Practice is the question upon which the decision of the motion to remand must turn. It is one of statutory interpretation, and in its solution we must be governed by established rules, while bearing in mind that the prime object always is to ascertain the legislative intent—an intent which is to be found, if possible, in the language used.

Amidst the conflicting views of the courts, the right of a plaintiff to remove such cases has always been upheld, where upheld at all, upon the ground that by pleading a counterclaim the actual defendant thereby as to such claim potentially converted the actual plaintiff into a defendant. In a certain sense this may be correct, but whether Congress, in the language employed in its legislation on the subject, so intended, may admit of grave doubt. That language is explicit, and is that the case may be removed "by the defendant or defendants therein, being nonresidents," where, as here, the ground therefor is diversity of citizenship. Whether that language should embrace a case like this must depend upon whether the Congress of 1887 so intended. In an effort to ascertain whether that Congress did so intend, it may be helpful to recall certain opinions of the Supreme Court in somewhat analogous cases. In United States v. Union Pacific Railroad, 91 U. S. 81, 23 L. Ed. 224, the court said:

"Congress acted with reference to a state of things believed at the time to exist; and, in interpreting its legislation, no aid can be derived from subsequent events."

In Platt v. Union Pacific R. R., 99 U. S. 63, 64, 25 L. Ed. 424, it was said:

"There is always a tendency to construe statutes in the light in which they appear when the construction is given. * * * But, in endeavoring to ascertain what the Congress of 1862 intended, we must, so far as possible, place ourselves in the light that Congress enjoyed, look at things as they appeared to it, and discover its purpose in the language used in connection with the attending circumstances."

See, also, to the same effect Mobile, etc., R. R. v. Tennessee, 153 U. S. 552, 14 Sup. Ct. 968, 38 L. Ed. 793, and Smith v. Townsend, 148 U. S. 495, 13 Sup. Ct. 634, 37 L. Ed. 533.

Indeed, the general proposition is well established that, in order to ascertain the intent of Congress, it is entirely admissible to look at the conditions surrounding the subject-matter of any legislation at the time of its enactment. Fifty years ago most of the states then in the Union had adopted Codes of Practice which more or less radically changed the common-law forms and modes of procedure. Other states as they were admitted doubtless did the same thing. Probably, and we think certainly, all of these Codes authorized a defendant in an action to seek counter relief against the plaintiff in the latter's own suit, instead of having to resort to an independent proceeding. None of the older Codes, so far as we can ascertain, in terms authorized the courts to construe the word "plaintiff" as meaning "defendant" when counter relief was sought by the actual defendant by his answer in the case. This was a much more modern invention. We are not advised that any of the Codes had such a provision previous to 1867, when the Supreme Court decided the case presently to be mentioned, nor are we advised that such a provision became general before the passage of the judiciary act of 1887, if, indeed, it has ever become so. We strongly incline to think, however, the case may now be that such a provision was a rare exception, and not the rule, in 1887. While in certain special proceedings authorized in this state, such as those by corporations to condemn lands (under consideration in Madisonville Traction Co. v. St. Bernard Mining Co. [C. C.] 130 Fed. 789), those respecting forcible entry and detainer, and those relating to distress for rent, other provisions apply, plenary actions of a more formal character are governed by certain prescribed rules, among which are those now to be noted.

Section 110 of the Civil Code of Practice refers to the caption of a pleading, and requires it to show the names of the parties and a designation of who are plaintiffs and who defendants; section 95 permits a defendant in his answer to plead a counterclaim or set-off against the plaintiff; stated generally, section 96 defines both a counterclaim and a set-off to be a demand made by the defendant against the plaintiff; section 97, subsec. 2, provides that no summons is necessary upon a counter demand thus pleaded; and section 372 provides that a dismissal of the original suit by the plaintiff shall not prevent the trial of the case on the counter demand of the defendant. Substantially the same general provisions had appeared in all the Kentucky Codes since 1857; but the revision which went into effect in 1877 in the chapter on the construction of its provisions contains section 732, subsec. 36, which is as follows, viz.:

"The word 'plaintiff' embraces a defendant who demands a set-off or counterclaim; the word 'defendant' embraces a plaintiff against whom such demand is made; and the word 'petition' embraces an answer or reply in which such demand is made, and also embraces cross-petitions."

This was the earliest appearance of that provision, or anything like it, in a Kentucky Code, and the plaintiff here now mainly relies upon

this special clause in that Code as bringing this case within the general language of the judiciary act of 1887. But did Congress contemplate or intend that the language it used should be construed according to its natural import, or did Congress intend that its meaning might be altered or affected by the legislation of other jurisdictions enacted without congressional consent? It seems to the court to be entirely clear that the language used by Congress must be construed according to its natural import. The natural import of the words "defendant or defendants" includes those persons only who, upon the record, are actually and not merely constructively such, as distinguished from the actors or plaintiffs therein, and the court is of opinion that Congress did not authorize the courts to change that import from time to time in order to meet the fluctuations of state rules for the construction and definition of words used in their respective Codes of Practice. We think this proposition is incontrovertible and of itself decisive of the case. The legislation of Congress was fixed when enacted, and could not be changed, directly or indirectly, by any power except its own.

But there are other propositions equally cogent. So far as the cases we have cited give any indication, the other states in which they arose had Code provisions analogous to those of Kentucky in the Code it enacted before 1877, and we must assume that Congress was perfectly aware of the almost, if not quite, universal rule of the states to permit an actual defendant, when sued, not only to plead to the merits of the plaintiff's claim, but also to set up counter demands in his own favor. But, though Congress well knew of these laws of the states, it has never in any removal act in terms extended the right of removal to a plaintiff in whose suit a defendant interposed an answer setting up a counter demand for any sort of positive relief in his own favor against the actual and original plaintiff. The failure of Congress to change the language of the earlier removal act in this respect is all the more significant when we consider the opinion of the Supreme Court delivered in 1867 in the case of West v. City of Aurora, 6 Wall. 139, 18 L. Ed. 819. Under the law and practice of the state of Indiana the defendant, a citizen of that state, asked affirmative relief against plaintiffs, who, though citizens of Ohio, had instituted their action in the state court. Acting upon the assumption that the defendant had thus converted the plaintiffs into defendants, the plaintiffs removed the case to the federal court, and the motion of the defendant to remand it was sustained. In all essential respects the question there raised seems to have been precisely analogous to the one now before the court, inasmuch as under the removal act then in force only a "defendant" could remove upon the ground of diverse citizenship. The Supreme Court, through Mr. Chief Justice Waite, in affirming the lower court, said:

"We think the Circuit Court was clearly right in its action. The filing of the additional paragraphs did not make a new suit within the meaning of the judiciary act. They were in the nature of defensive pleas, coupled with a prayer for an injunction and general relief. This, if allowed by the Code of Indiana, might give them, in some sense, the character of an original suit, but not such as could be removed from the jurisdiction of the state court.

The right of removal is given only to a defendant who has not submitted himself to that jurisdiction; not to an original plaintiff in a state court who, by resorting to that jurisdiction, has become liable under the state laws to a cross-action. * * * In the case before us West and Torrance, citizens of Ohio, voluntarily resorted, as plaintiffs, to the state court of Indiana. They were bound to know of what rights the defendants to their suit might avail themselves under the Code. Submitting themselves to the jurisdiction, they submitted themselves to it in its whole extent. The filing of the new paragraphs, therefore, could not make them defendants to a suit removable on their application to the Circuit Court of the United States. * * * A suit removable from a state court must be a suit commenced by a citizen of the state in which the suit is brought, by process served upon a defendant who is a citizen of another state, and who, if he does not elect to remove, is bound to submit to the jurisdiction of the state court."

The twelfth section of the judiciary act of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. p. 79) provided for a removal by the "defendant," and the question to be determined by the Supreme Court was not when the removal should be made, but whether a plaintiff, when counter relief was asked by his opponent, could be regarded, theoretically or constructively, as a defendant in his own suit, and we do not doubt that the second syllabus of the report in the case accurately expresses the exact effect of the court's ruling when it says that:

"No removal can be made of a defense or answer, though of such a character as that, under a statute of the state, it becomes, by a discontinuance of the original suit itself, a proceeding that may go on to trial and judgment as if in some sense an original suit."

These propositions all appear to the court to be as perfectly applicable to the statute now in force as they were to that in force in 1867. At all events, Congress, with that opinion before it which explicitly denied to the plaintiff the right to remove such a case, and which put a definitive limitation upon the word "defendant" as used in section 12 of the original judiciary act, deliberately declined to change or broaden the language so construed. By using substantially the same language as that which had thus been interpreted, Congress, in the act of 1887 and amendments thereto, emphasized the legislative intent that a plaintiff in a suit should not, by construction, be regarded as a defendant when, in a suit of his own filed in a state court, his opponent under the state practice turned upon him with a prayer for independent and affirmative relief in plaintiff's suit, instead of a separate action. Nor can we doubt that the Supreme Court, in West v. City of Aurora, meant to lay down the general proposition that the word "defendant," used in the judiciary act, did not include, and was not meant by Congress to include, any person except actual and technical defendants, who are such on the record, as distinguished from the actor or plaintiff therein.

Unless we disregard these indicia of legislative intent, we cannot conclude that the act of 1887, in the use of the words "defendant or defendants," should have a different meaning from that of the act of 1789 in respect to the character of the party to whom the right of removal is given. The essential proposition, established by the Supreme Court and acquiesced in by Congress, is that when a plaintiff sues in a state court he cannot, upon the mere ground of diverse citizenship,

remove his suit to the federal court when the defendant thus sued by him avails himself of the right to seek in that suit a claim to counter relief of an independent and affirmative character. Full effect should be given to the natural meaning of words used in a legislative enactment, unless there are indisputable grounds for the conclusion that the legislative body did not so intend in the particular instance. Here the use of substantially the same word as that previously interpreted by the Supreme Court unmistakably manifests the congressional intent. The general proposition is well established that, where words in a statute have acquired through judicial interpretation a well-understood meaning, it is assumed that that meaning was intended in subsequent statutes on the same subject. The Abbotsford, 98 U. S. 444, 25 L. Ed. 168. See, also, White-Smith Co. v. Apollo Co., 209 U. S. 14, 28 Sup. Ct. 319, 52 L. Ed. 655.

Upon these considerations, and in view of the judicial interpretation of the previous act, we have reached the conclusion that Congress intended to give the right of removal upon the ground of diverse citizenship to those persons only who were defendants in the plaintiff's suit, and not to an actual plaintiff, even though affirmative relief against him in the suit might be claimed by way of counter demand. Consequently we hold that the plaintiff here had no right to remove the case.

The motion to remand must be sustained.