## SAN ANTONIO SUBURBAN IRRIGATED FARMS v. SHANDY.

District Court, D. Kansas, First Division.
December 14, 1928.

No. 3296.

Mark Adams, of Wichita, Kan. (Vermilion, Evans, Carey & Lilleston, of Wichita, Kan., on the brief), for plaintiff.

Irving M. Platt, of Junction City, Kan., for defendant.

McDERMOTT, District Judge. This motion squarely presents a question that has vexed the courts for many years, upon which there is much judicial opinion and a direct conflict of decision, where there is no controlling authority in this circuit, and where the letter of the statute is opposed to the principle underlying the removal of causes. The trouble arises in Code states, where an effort to simplify resulted in confusion.

The question is: Where a nonresident plaintiff sues a resident defendant on a cause of action involving less than the jurisdictional amount; where the defendant not only answers, but files a cross-petition, asking affirmative relief against the plaintiff for more than $3,000 (in addition to denying any liability to the plaintiff)—query, may the plaintiff remove the controversy?

The plaintiff sued on promissory notes, given pursuant to a contract to buy some Texas land for $8,000, of which $1,000 was paid in cash; $3,000 was paid by the notes sued on; the balance of $4,000 was to be

paid by vendor's lien notes. The suit was commenced in the state court; the defendant answered, denying liability on the ground of fraud; concurrently with the answer he filed a "cross-petition," setting up the contract, alleging the same fraud as alleged in his answer, and asking that the $1,000 paid be returned, and that his contract, with its additional liability of $4,000, be canceled and set aside. Within the time prescribed by statute to answer this cross-petition, the plaintiff removed. May it do so?

Many of the cases cited involve questions not necessary to decide, and which are not authorities upon the case here presented; for example, cases where the defendant is sued for $1,000, files a counterclaim for $4,000, and the counterclaiming defendant seeks to remove, or where the removing party seeks to add $2,000 sued on to $2,000 counterclaimed for, to make the jurisdictional amount, or where the plaintiff, with an original claim exceeding the jurisdictional amount, with therefore a choice of forums, chose the state court, and thereafter, upon the coming in of the counterclaim, sought to change his forum, or where, under the state practice, the counterclaim was improper, and could be stricken on motion, or cases under the old law, where a party waived the right to remove by appearance.

The cross-petition of the defendant is proper under the Kansas Code. Section 60—710, Rev. St. Kansas 1923, gives the defendant the right to sue on a counterclaim and to ask affirmative relief; section 60—712 provides that, when the counterclaim makes new parties necessary, they may be brought into the case by summons, or the court may require the counterclaim to be made the subject of a new action. The defendant is not barred by his failure to counterclaim (Stroup v. Pepper, 69 Kan. 241, 76 P. 825), although such a counterclaim as is filed here is entirely permissible (Hodge v. Bishop, 96 Kan. 419, 151 P. 1105; Miller v. Thayer, 96 Kan. 278, 150 P. 537; Bank v. Elliott, 97 Kan. 64, 154 P. 255).

Under the Kansas procedure, the cross-petition is what its name implies, a petition against the plaintiff. The statute provides for a reply to the answer of the defendant, and also for alleging "new matter * * * constituting a defense to such new matter in the answer." Section 60—717, R. S. Kan. 1923. While the original claim sued on is in the control of the plaintiff, and he may dismiss at any time before final submission (section 60—3105, R. S. Kan. 1923), the control of the cross-petition is in the defend-

ant, and not the plaintiff, and, even if the plaintiff dismisses his action, the case goes on upon the issue joined on the cross-petition (Venable v. Dutch, 37 Kan. 515, 15 P. 520, 1 Am. St. Rep. 260). In the latter case the court said:

"After plaintiff dismissed his cause of action, the defendant under his answer seeking to quiet his title is virtually plaintiff in all things save in name; the facts alleged in his answer must be sufficient to constitute a cause of action, and the relief to which he is entitled must be properly demanded; the burden of proof is upon him, and he must establish his cause of action by a preponderance of testimony before he is entitled to a judgment in his favor; being in the place of a plaintiff, and subject to his burdens, he also possesses his rights, and therefore it is within the discretion of the court to allow him to amend his pleading by adding another count."

In support of the motion to remand, defendant cites Foster's Federal Practice, vol. 3, pp. 2900, 2954 (6th Ed.), which supports defendant's position and cites a few of the older cases; the language of the statute which accords the right to remove to "the defendant, or defendants therein, being nonresidents of the state"; and the case of West v. Aurora, 6 Wall. 139, 18 L. Ed. 819. It should also be said that the removal act of 1875 (section 3 [18 Stat. 471]) accorded the right to remove to "either party, or any one or more of the plaintiffs or defendants entitled to remove * * *"; the present law (28 USCA § 73) is limited in terms to "defendant or defendants," and the defendant here is entitled to the benefit of the rule of statutory construction that Congress intended something by the change in phraseology.

The language of the opinion in West v. Aurora, supra, is broad enough to support defendant's motion to remand. The decision itself is not. In the first place, the removal statute then required the defendant to remove "at the time of entering his appearance," and this it did not do. Again, the record was so fragmentary that it was impossible to tell whether the paragraphs in the answer were, properly speaking, a counterclaim at all, and the court said that the state of the record was "fatal to the supposed right of removal." In its opinion the court spoke of the allegations of the answer as "in the nature of defensive pleas, coupled with a prayer for injunction and general relief." If they were "defensive pleas," the question here presented was not before the court. Again, it appears from the record of this litiga-

tion in the state courts that, in fact, enough was involved to enable the plaintiff to have gone into the United States court at the outset, an option not present in the case at bar. Aurora v. West, 22 Ind. 88, 85 Am. Dec. 413; Id., 25 Ind. 148.

To these authorities, supporting the right to remove, may be added the following decisions: Waco Hardware Co. v. Michigan Store Co., 91 F. 289 (5th C. C. A.); Illinois Central R. Co. v. Waller & Co., 164 F. 358 (C. C. Ky.); Glover Machine Works v. Cooke, 222 F. 531 (D. C. Ky.); Mohawk Rubber Co. v. Terrell, 13 F.(2d) 266 (D. C. Mo.). There are numerous dicta to the same effect in cases where the defendant sought to raise the jurisdictional amount by counterclaim and then remove, cases not in point here.

The decisions holding contra, upholding the right of a nonresident plaintiff, who was compelled to go to the state court in the first instance, to remove when confronted with a counterclaim exceeding the jurisdictional amount, are: Carson Lbr. Co. v. Holtzclaw, 39 F. 578 (C. C. Mo.); Walcott v. Watson, 46 F. 529 (C. C. Nev.); Price & Hart v. Ellis & Co., 129 F. 482 (C. C. Ark.); Pierce v. Desmond, 11 F.(2d) 327 (D. C. Minn.); Zumbrunn v. Schwartz, 17 F.(2d) 609 (D. C. Ind.); Consolidated Textile Co. v. Iserson, 294 F. 289 (D. C. N. Y.). There are dicta to the same effect in other cases, where the precise point was not before the court.

In this state of the authorities, the duty of the court is to decide the question in accord with what it believes to be the intent of Congress. The Circuit Court of Appeals of this circuit, speaking through Judge Sanborn, has said that the right of removal is a valuable constitutional right, and ought not to be denied because of the existence of a doubt; rather, the learned justice said, in case of doubt the right of removal should be sustained, because in that event an error may be corrected on appeal, while an error the other way is not appealable. Boatmen's Bank v. Fritzlen, 135 F. 650 (8th C. C. A.).

The entire scheme of the Judiciary Act is to give a nonresident, who either sues or is sued for more than $3,000, the right to have his controversy determined in a national court. The right arose because of a then existing jealousy among the colonies, which has largely disappeared; the right is still of great value, because of the opportunity it affords nonresidents to have their matters submitted to a jury not affected by local prejudices and favoritisms, a consideration which may unconsciously affect courts as well. It

is not to be supposed that Congress intended that such right can be taken away by artifice or device; the law is uniform that parties will be realigned to get at the truth, and removal is granted or denied according to that realignment; that is, according to the real, and not the nominal, position of the parties. If the right to remove does not exist at the time prescribed by statute for its exercise, the cause may nevertheless be later removed, if the obstacle to removal disappears. Nor can the right to remove be prevented by fraudulent joinder of a resident.

Until the coming in of the cross-petition in this case, the plaintiff had no right to come to a national court. It must either tear up its notes for $3,000 or sue in the state courts. The defendant had an option of pleading defensively only, or filing a cross-petition, asking for affirmative relief. He filed such a cross-petition, asking affirmative relief to the extent of $5,000. This cross-petition will stand, even if plaintiff dismisses its suit. For the first time, then, the nonresident finds itself confronted with a controversy exceeding the jurisdictional amount. Every element of removal exists, except it is a titular plaintiff, although actually a defendant, as to the cross-petition.

I do not believe that Congress intended that a valuable right should be denied because of the circumstance that the Kansas procedure permits a plaintiff as to one matter to become a defendant as to another, in the same case. Such denial would make the right given by Congress turn on form rather than on substance; it would let the nominal prevail over the actual—would follow the letter rather than the spirit. Such construction seems to me to be opposed to the doctrine of realignment, of fraudulent joinder, and other accepted doctrines which cut through the bark to get at the tree.

Although the facts are not entirely pertinent, the question seems to me to be ruled by two decisions of the Supreme Court. In Mason City v. Boynton, 204 U. S. 570, 27 S. Ct. 321, 51 L. Ed. 629, the court dealt with the right to remove in a condemnation case. The statutes of Iowa provided for an appeal from the condemnation award, and in terms designated the landowners as "plaintiff" in such review proceedings. The landowner removed the cause. The Circuit Court of Appeals of this circuit (see 158 F. 599) certified the question of whether the landowner, a titular and statutory plaintiff, could remove the cause. A decision of the Supreme Court of Iowa (Myers v. Chicago &

N. W. R. Co., 118 Iowa, 312, 91 N. W. 1076) was relied upon to defeat removal. The Supreme Court said the case should be removed, despite the fact that the removing party was the nominal plaintiff. The court said:

" "But this court must construe the act of Congress regarding removal. And it is obvious that the word defendant as there used is directed toward more important matters then the burden of proof or the right to open and close. It is quite conceivable that a state enactment might reverse the names which for the purposes of removal this court might think the proper ones to be applied."

In Merchants' Heat & Light Co. v. Clow, 204 U. S. 286, 27 S. Ct. 285, 51 L. Ed. 488, the Supreme Court dealt with a counterclaim, asking affirmative relief, growing out of the same transaction as the plaintiff sued on. The court held that the defendant by his counterclaim became in fact the plaintiff and must take the consequences. The court said:

"But by setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action and by invoking submitted to it. It is true that the counterclaim seems to have arisen wholly out of the same transaction that the plaintiff sued upon, and so to have been in recoupment rather than in set-off proper. But even at common law, since the doctrine has been developed, a demand in recoupment is recognized as a cross demand as distinguished from a defense. Therefore, although there has been a difference of opinion as to whether a defendant by pleading it is concluded by the judgment from bringing a subsequent suit for the residue of his claim, a judgment in his favor being impossible at common law, the authorities agree that he is not concluded by the judgment if he does not plead his cross demand, and that whether he shall do so or not is left wholly to his choice. Davis v. Hedges, L. R. 6 Q. B. 687; Mondel v. Steel, 8 M. & W. 858, 872; O'Connor v. Varney, 10 Gray [Mass.] 231. This single fact shows that the defendant, if he elects to sue upon his claim in the action against him, assumes the position of an actor and must take the consequences. The right to do so is of modern growth, and is merely a convenience that saves bringing another suit, not a necessity of the defense.

"If, as would seem and as was assumed by the form of pleading, the counterclaim was within the Illinois statute (Charnley v. Sibley [C. C. A.] 73 F. 980, 982), the case is still stronger. For by that statute the defendant may get a verdict and a judgment in his favor if it appears that the plaintiff is indebted to him for a balance when the two claims are set against each other; and after the cross claim is set up the plaintiff is not permitted to dismiss his suit without the consent of the defendant or leave of court granted for cause shown. Illinois Rev. Stats., c. 110, §§ 30, 31; East St. Louis v. Thomas, 102 Ill. 453, 458; Butler v. Cornell, 148 Ill. 276, 279 [35 N. E. 767].

"There is some difference in the decisions as to when a defendant becomes so far an actor as to submit to the jurisdiction, but we are aware of none as to the proposition that when he does become an actor in a proper sense he submits. De Lima v. Bidwell, 182 U. S. 1, 174 [21 S. Ct. 743, 45 L. Ed. 1041]; Fisher v. Shropshire, 147 U. S. 133, 145 [13 S. Ct. 201, 37 L. Ed. 109]; Farmer v. National Life Association, 138 N. Y. 265, 270 [33 N. E. 1075]. As we have said, there is no question at the present day that, by an answer in recoupment, the defendant makes himself an actor, and to the extent of his claim, a cross plaintiff in the suit."

It is suggested by counsel, and in some of the cited cases, that plaintiff knew, when it brought the suit in the state court, that the Kansas Statute permitted counterclaims, and it therefore invited the jurisdiction of the state court on the counterclaim. This begs the question. If the right to remove such a counterclaim exists, the plaintiff presumably knew that, if a cross-petition was filed for more than $3,000, it could remove. It is also suggested that the plaintiff did not need to sue in the state court. It had to sue in the state court or not at all. It is urged that plaintiff might have sued on the contract pleaded in the cross-petition, rather than on the notes, and thus have pleaded a jurisdictional amount. But we must deal with this lawsuit, and not some other the plaintiff might have brought.

The motion to remand will be denied.