## Wytheville

G. M. HUFFMAN V. W. N. JACKSON.

June 10, 1940.

Record No. 2252.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Hoge & Austin,* for the plaintiff in error.

*Lawson Worrell, Jr.,* and *Showalter, Parsons, Kuyk & Staples,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This litigation arises out of a collision between an automobile driven by W. N. Jackson and another driven by G. M. Huffman, in which both drivers were injured and both cars were badly damaged. Jackson sued Huffman for damages and the latter filed a cross-claim under Code 1936, section 6097a (Acts 1926, ch. 331, p. 598; Acts 1928, ch. 249, p. 755; Acts 1932, ch. 29, p. 23). In their respective pleadings each party claimed that the collision was due to the negligence of the other.

At the conclusion of all of the evidence the trial court struck the evidence of Huffman on his cross-claim on the ground that his own testimony disclosed that he was guilty of contributory negligence which barred any right of recovery. This necessitated a verdict and judgment in favor of Jackson on the cross-claim, although these were not formally entered.

Jackson's right to recover of Huffman was submitted to the jury and resulted in a verdict of $1,000, on which the trial court entered judgment.

In his petition for a writ of error Huffman makes these principal assignments of error:

(1) The trial court erred in striking his (Huffman's) evidence on the cross-claim.

(2) The trial court erred in not setting aside the verdict of the jury and in not entering final judgment for him (Huffman), the defendant, on the ground that the evidence showed that Jackson was guilty of contributory negligence as a matter of law.

The collision occurred at the entrance to Snidor's filling station on the south side of Highway No. 460, in the village of Bonsack, in Roanoke county. Highway No. 460 runs east and west. The Cloverdale road enters it from the north, some 340 feet east of the filling station.

At the time of the collision Jackson was driving eastwardly along the southern side of Highway No. 460, and was approaching the filling station on his right and the intersection of the Cloverdale road on his left. Huffman came south on the Cloverdale road to its intersection with Highway No. 460. He intended to cross the latter road and to enter the filling station on the opposite side. In doing so he proceeded diagonally in a southwesterly direction across Highway No. 460 and across the path of the oncoming Jackson car. Just as the Huffman car reached the entrance to the filling station its right front bumper was struck by the right front bumper of the Jackson car. The force of the impact drove the Huffman car back eastwardly a distance of some 21 feet, where it came to rest against a fence on the southern side of Highway No. 460. Both cars were practically demolished in the collision and both drivers were injured.

Jackson testified that just prior to the collision he was driving on his "right side of the highway;" that he was listening to the radio and was "not paying much attention to the speed but thought that he was traveling from 30 to 35 miles per hour;" that he did not see the Huffman car until it turned from behind a westbound truck only 18 feet ahead of him; and that he immediately applied his brakes

but the cars collided with such force as to completely wreck both of them.

Huffman testified that before entering Highway No. 460 from the Cloverdale road he came to a complete stop in obedience to a highway marker; that he looked both to the east and to the west and saw a truck approaching on his left, bound westwardly along Highway No. 460; that after the truck had passed the intersection and had proceeded about 200 feet to the westward, he (Huffman) started diagonally across Highway No. 460 towards the filling station; that upon reaching the center of Highway No. 460 he saw the Jackson car some 1,100 feet to his right approaching rapidly; that thinking he had ample time to cross he continued his diagonal course across the highway; that he then observed that the Jackson car was running at a rapid rate of speed, from 50 to 60 miles per hour; that he watched the Jackson car all the while; that it did not change its course and when only about 18 feet away its brakes were applied, but that this was too late to avoid the collision.

According to Huffman's own testimony he was guilty of negligence. Upon his reaching the northern side of Highway No. 460 it was his purpose to go to the filling station on the opposite side of the road, some 340 feet west of the intersection. Instead of turning to his right and proceeding westwardly along the northern side of Highway No. 460 until he reached a point opposite the filling station and then making a sharp left turn across the road, as he should have done, he undertook to reach his destination on the opposite side of the road by proceeding diagonally across the highway. In doing this he drove a considerable distance on the left half of the road. This necessarily appears from the physical situation and is corroborated by the fact that the collision occurred almost head on on the southern or his left side of the road. His conduct was in plain violation of the statute which requires a car, except in instances not here material, to be driven on the right half of the highway. (Code 1936, section 2154(112).)

■ Moreover, according to Huffman's testimony, when he reached the center of the road he saw that the Jackson car was approaching at a rapid rate of speed. Despite this he crossed the center line of the road on his diagonal course and drove and continued to drive on the wrong side of the road, directly in the path of the oncoming car. When he saw that the Jackson car was not going to stop he should have directed his car to the right and returned to his proper side of the road. There was nothing to prevent his doing so.

■ We think the trial court correctly held that Huffman was guilty of negligence which proximately caused the collision and precluded his recovery on the cross-claim. This being so, the court was right in striking Huffman's evidence on his cross-claim, provided it was made perfectly plain to the jury just what issues had been withdrawn from them and what were being left to them to decide.

■■ Whether the remaining issues here were properly submitted to the jury, or whether the manner in which Huffman's evidence was stricken was prejudicial to his defense of Jackson's claim against him, we need not stop to inquire, for the reason that we are of opinion that Jackson himself was guilty of negligence which barred his right of recovery in any event.

By his own testimony Jackson admits that he was proceeding at an unlawful speed of from 30 to 35 miles per hour through the village of Bonsack when the highway sign indicated to him a permitted speed of only 25 miles per hour. The force of the impact, the fact that the Huffman car was driven back a distance of 21 feet, and the complete demolition of both cars indicate that the speed was far greater than Jackson's estimate. It is true that the evidence before us does not show that this sign was placed on the highway by the Highway Department. But Code 1936, section 2154(102) (Acts 1932, ch. 342, p. 648), prohibits the erection and maintenance of other than official signs of this character. Therefore, the presumption is that this sign was such as is lawful and permitted by statute.

Again, Jackson testified that he did not see the Huffman car until it turned from behind a truck within 18 feet of him. His theory of the collision, although he does not say so in so many words, seems to be that the Huffman car was following closely behind the truck until it reached a point opposite the filling station when it turned to the left directly across the road. This is contrary to all of the evidence. Huffman testified that he did not start across the road until the truck had passed about 200 feet beyond him. Mrs. Snidor, an eyewitness, testified that between the rear of the truck and the Huffman car there was the usual driving distance of three or four cars.

Furthermore, the uncontradicted evidence is that the Huffman car did not follow the truck down the road on its proper side but cut diagonally from the Cloverdale intersection to the filling station, a distance of more than 340 feet. All the while, therefore, it was in plain view of Jackson if he had but looked in that direction. He admits that just a moment before the collision he was listening to the radio in his car and "was not paying much attention to the speed." The inescapable conclusion, we think, is that he was also not paying "much attention" to other cars on the highway.

On the whole our conclusion is that the collision was due to the concurring negligence of the drivers of both cars and that neither is entitled to recover of the other. Consequently the trial court should have set aside the verdict in Jackson's favor.

The judgment in favor of Jackson in his action against Huffman will be reversed and a final judgment will be here entered for the defendant. A final judgment will be likewise entered for Jackson, the cross-defendant on the cross-claim.

*Reversed and final judgment.*