### HANEY v. WILCHECK et al.

### ALTMAYER v. HANEY (two cases).
### WILCHECK v. HANEY.

Nos. 48, 5, 4, and 45, Civil.

District Court, W. D. Virginia.

April 18, 1941.

Walker C. Williams, of Charlottesville, Va., and Walter M. Evans, of Richmond, Va., for plaintiff in No. 48 and for defendant in Nos. 4, 5, and 45.

Walsh & Waddell, of Charlottesville, Va., and Robert G. Butcher, of Richmond, Va., for plaintiffs in Nos. 4 and 5 and for the defendants in No. 48.

Hunton, Williams, Anderson, Gay & Moore, of Richmond, Va., for plaintiff in No. 45 and for defendants in No. 48.

PAUL, District Judge.

The matters before the court in the above styled cases have arisen as follows: On October 16, 1940, an automobile (a Chevrolet) owned by Phillip H. Haney was being ·driven by him along a highway in Greene County, Virginia, and was in collision with another automobile (a LaSalle), which was owned by Jay P. Altmayer of Mobile, Alabama, but which was occupied at the time by Marvin C. Altmayer and Antoinette P. Altmayer, parents of Jay P. Altmayer, and by John Wilcheck, the latter of whom was driving the car. Jay P. Altmayer, owner of this second car, was not present in the car at the time of the accident. He had, some time previously, loaned the car to his mother, Antoinette P. Altmayer, for use on a visit to New York and, the visit having ended, Mr. and Mrs. Altmayer were in course of their return to their home in Alabama when the accident occurred. Before leaving New York, Wilcheck had been employed as chauffeur to drive the car back to Alabama.

All of the Altmayers are citizens of Alabama, Wilcheck is a citizen of New York, and Haney, the other party to the accident, is a citizen and resident of Virginia.

As a result of this accident, Haney, on January 4, 1941, instituted suit in the Circuit Court of Greene County, Virginia, for $2,500 for personal injuries and damages to his automobile, in which he named as defendants all of the occupants of the Altmayer car and also J. P. Altmayer. This proceeding was by notice of motion under the Virginia statute, Code Va. § 6046, and the notice was returnable to January 20, 1941.

On January 13, 1941, Marvin C. Altmayer and Antoinette P. Altmayer instituted their separate suits against Haney in· the Charlottesville division of this (the U. S. District) Court, claiming damages for personal injuries in the amounts of $15,000 and $20,000 respectively. On January 17, 1941, Wilcheck instituted suit against Haney in the Harrisonburg division of this court for personal injuries in the amount of $20,000. All of these suits, of course, grew out of the same accident and represent the not unusual situation wherein each party to an automobile collision blames the other for negligence.

On January 20, 1941, the return day of Haney's notice of motion, the Altmayers and Wilcheck appeared in the state court by counsel and each filed in writing a plea of not guilty and also filed counterclaims or cross demands against Haney. The counterclaim of Jay P. Altmayer was for $1,750 for damage to the LaSalle car owned by him and in which his parents and Wilcheck had been riding. The counterclaims of Wilcheck and the two elder Altmayers were in the same amounts respectively for which they had sued in this court. The pleas and counterclaims of each of the defendants in the state court were embodied in the same writing and simultaneously with their filing, Wilcheck, Marvin C. Altmayer and Antoinette P. Altmayer submitted their motion to remove the case to the federal court, accompanied by the appropriate bond. Notice of the petition for removal had been served on counsel for Haney prior to January 20th, and on that day they appeared and objected to the removal.

The order entered in the state court on January 20, 1941, recites, so far as is pertinent here, that the parties appeared by counsel and that the notice of motion, having been duly executed by service upon the defendants, was docketed; that the defendants filed their respective pleas of not guilty and their counterclaims. That the defendants Wilcheck, Marvin C. Altmayer and Antoinette P. Altmayer filed their petition to remove the cause to the federal court and tendered therewith the usual removal bond; that the plaintiff objected to the petition for removal and was given leave to file his objections in writing. The order concluded by taking the petition for removal under advisement.

On January 29, 1941, the judge of the state court entered an order removing the case to the Harrisonburg division of this court, and on February 12, 1941, the record from the state court was received and filed in this court. The order of removal entered by the state court on January 29th recites that the defendants had appeared "specially and solely for the purpose of removing", etc., but no significance is attributed to this language in so far as it may be deemed to vary from the facts attending their appearance, which have been hereinbefore recited and are not in dispute.

On January 29th, the same day on which the order of removal was entered and presumably before counsel for Haney had knowledge of it, they filed motions to dismiss the cases brought by Marvin C. Altmayer and Antoinette P. Altmayer in this court on the ground that the same cause of action was being litigated in the Circuit Court of Greene County. On February 3rd, Haney filed a similar motion of dismissal as to the suit brought against him by Wilcheck in this court. On February 21st, Haney filed his motion to remand to the state court the action removed therefrom.

Because of the interrelation of the motion to remand one case and to dismiss the others, the motions have been heard together. It is true, technically speaking, that since Haney's suit has been removed here and is not now pending in the state court the grounds on which are based the motion to dismiss the cases brought here do not exist at this moment. But if the motion to remand be granted, they will again come into existence and it therefore seems proper to consider both motions at this time.

### The Motion to Remand
### (Haney v. Wilcheck et al.)

The motion to remand the case is based primarily on three grounds: (1) That the amount necessary to give this court jurisdiction is not involved, in that Haney's claim was for $2,500 only, a sum insufficient to give this court jurisdiction, and that the filing of the counterclaims does not alter this situation; (2) that when the defendants appeared in the state court and filed counterclaims, they submitted themselves to the jurisdiction of that court by invoking its affirmative action in their behalf and thereby waived any rights they might otherwise have had to a removal;

(3) that the petition for removal was not submitted by all of the defendants, Jay P. Altmayer not having been a party thereto. It is the first and the second of the grounds mentioned—particularly the first—which have been most emphasized and most earnestly argued.

In their petition for removal addressed to the state court and likewise in their argument here in opposition to the motion to remand, the defendants take the broad position that the claims of the parties against each other grow out of the same happening and that there is but one controversy; and that this controversy involves not only the claim of Haney for $2,500 but also the claims of defendants against Haney for amounts aggregating $55,000. In other words, that a single happening has taken place as a result of which it must be determined whether the defendants are liable to Haney for $2,500 or any part thereof or whether Haney is liable for the amounts, or any part thereof, claimed by defendants; and that, therefore, "the amount in controversy" is greatly in excess of $3,000 and entitles them as non-resident defendants to remove to this court.

Examination of the record in the state court shows the petition for removal to allege: "That the matter in controversy in said suit exceeds the sum of Three Thousand Dollars * * * in this, that each of said defendants * * * has a claim against said Phillip B. Haney, plaintiff, which arises out of the occurrence that is the subject matter of the plaintiff's claim which claim of said Marvin C. Altmayer is in the sum of Fifteen Thousand Dollars * *. * (reciting the claims of other defendants) * * *; that suits have been instituted by each of said parties claimant against said Phillip B. Haney and are now pending in the District Court of the United States for the Western District of Virginia." The petition further alleged that Haney's suit was not instituted in good faith but in an effort to "evade and avoid the jurisdiction of the United States District Court which is the tribunal to which Marvin C. Altmayer, Antoinette P. Altmayer and John Wilcheck are entitled to submit their respective claims for adjudication".

The petition for removal, containing the above allegations, was drafted, and notice that it would be presented was given, several days before January 20th, which date

was the return day of the notice of motion in the state court and, by the usual Virginia practice, the first day on which a plea could be entered or a motion to remove be heard. It appears, therefore, that the grounds of the petition to remove were formulated before any counterclaims were filed in the state court and, as shown by the language of the petition, rested on the assertion that the suits then pending in the federal court, in which defendants were plaintiffs, involved the same controversy. On January 20th, the defendants appeared in the state court, pleaded to Haney's suit against them, filed counterclaims as heretofore related, and simultaneously submitted their petition to remove.

The fact that the grounds on which the petition to remove was based were alleged prior to the assertion of any counterclaim and at a time when the suit in the state court involved only Haney's claim for $2,500 is, in my mind, not important in the ultimate decision of the questions here involved. But it does throw some light upon the nature of defendants' contention that the case was properly removed. If the grounds of removal as set out in the petition to remove are sufficient and sound, then there would have been no reason to file any counterclaims in the state court. That the counterclaims were filed leads to the conclusion that the defendants realized that removal was not justified merely because of their pending suits in the federal court; that it was necessary that the suit in the state court should involve more than $3,000 and that the counterclaims were intended to accomplish this and thereby permit removal. If this was their reasoning, I think they were undoubtedly correct in believing that so long as the only subject of the suit in the state court was Haney's claim of $2,500, there could be no removal; that regardless of the suits pending in the federal court involving the same subject matter, the judge of the state court would not have been justified in removing a case in which the amount necessary to the jurisdiction of the federal court was lacking. In explanation it may here be said that the Virginia statute, Code Va. § 6046, relating to proceeding by notice of motion provides that the notice shall be docketed on the return day, and it is the generally accepted interpretation that any defensive pleading may not be filed until the return day when the notice is docketed. Under this situation, the defendants could not plead or file any counterclaim until January 20th and, therefore, notice of their petition to remove, given prior to January 20th, could not allege the counterclaim not then filed. Regardless of this situation, however, it is apparent that defendants realized that it was necessary, in order to justify removal, that the existence of a controversy involving more than $3,000 should appear from the record in the state court; that the pendency of suits for the necessary amounts in another court could not supply this necessary element. And, therefore, the counterclaims were filed in the belief that they would create the amount necessary to removal.

The question, therefore, is whether the filing of the counterclaims caused the existence of a controversy in the state court involving more than $3,000 and whether the defendants were entitled to remove it to this court.

The Virginia statute under which the defendants presumably acted in filing their counterclaims or cross-demands is Sect. 6097a of the Code, which provides, so far as is pertinent here, that: "In any action at law * * * for a tort, a defendant may file in writing a cross-claim averring that the plaintiff is liable for a tort to the defendant for damages arising out of the same transaction. Such cross-claim shall be tried at the same time and as a part of the original case, and the court * * *. may allow the defendant to recover damages against the plaintiff on such cross-claim where the law and the evidence make it proper. * * *" It is to be noted that the statute does not require that any cross-claim be asserted in the plaintiff's action or not at all. It merely permits its assertion in that action if the defendant so chooses.

It is earnestly insisted by defendants that the purpose of this statute is to permit the settlement in one action of the conflicting charges of liability and claims for damages growing out of a tort—particularly one of this nature. That it is one controversy and that the amount involved in such controversy is to be determined not by consideration of the claim asserted by one party only, but by consideration of the claims of other parties as well. That the "amount in controversy" is the amount for which a possible judgment may be entered against either party. And that when the pleadings show that

amount to be in excess of $3,000, the defendants, being non-residents, are entitled to remove to a federal court.

In support of their position, the defendants rely on language used in a number of cases in which general statements are made to the effect that where the parties are asserting claims against each other in one action, the demands of both plaintiff and defendant should be considered in determining the amount involved for purposes of jurisdiction. Undoubtedly there are statements to this effect in a number of cases, but in studying them it becomes apparent that in many of them the statements were made with reference to a situation importantly different from that existing here. And in many others the language now cited as authority was purely by way of dictum. It is true also that there has been, particularly among the older cases, much conflict and confusion on this question; so much so that many of the opinions refer to the conflict. I find also that many of the citations relied on in older cases are inappropriate and no way in point.

### Cases Cited by Defendants.

I have read with care each of the cases cited by defendants in their brief as supporting their contentions. American Sheet & Tin Plate Co. v. Winzeler, D.C., 227 F. 321; Central Commercial Co. v. Jones-Dusenberry Co., 7 Cir., 251 F. 13; Home Life Ins. Co. v. Sipp, 3 Cir., 11 F.2d 474, 475, were all cases originally brought in the federal court and involved no question of removal. In the two first named cases, the plaintiff had in each case sued for a sum sufficient to confer federal jurisdiction and the court was not called on to consider the effect of a counterclaim as affecting the jurisdictional amount. The expressions on this subject in the opinions are purely dicta having no bearing on the questions being determined. Home Life Ins. Co. v. Sipp, supra, cites the fact that certain courts have held that the amount of a plaintiff's claim and the amount of a counterclaim can be taken together as determining the jurisdictional amount; but, without giving specific approval to this doctrine, it holds that it could not, in any event, serve to create jurisdiction in that particular case.

In New York I. & P. Co. v. Milburn, etc., Co., C.C., 35 F. 225, cited by defendants, which involved a motion to remand, it was contended that a counterclaim was to be considered in determining the jurisdictional amount. The court, after reciting that the cases "are in direct conflict on the question", stated that it found no occasion to decide it and remanded the case for other reasons.

Ryan v. Bindley, 1 Wall. 66, 17 L.Ed. 559, and Dushane v. Benedict, 120 U.S. 630, 7 S.Ct. 696, 30 L.Ed. 810, likewise cited by defendants, have no pertinency here. These were cases where the plaintiff had sued for amounts sufficient to give the federal trial court jurisdiction and had been met with a counterclaim in a larger amount. The trial court having tried the entire matter, the question arose as to whether the right of appeal to the Supreme Court was to be determined solely by the plaintiff's claim (insufficient in itself to confer jurisdiction on the Supreme Court) or by considering also the amount of the counterclaim which had likewise been the subject of trial and judgment.

The defendants strongly rely upon the case of Kirby v. American Soda Fountain Co., 194 U.S. 141, 24 S.Ct. 619, 620, 48 L.Ed. 911. In that case, a suit was pending in the state court against a non-resident defendant in which the plaintiff prayed for cancellation of a written contract and for $2,500 damages. This was removed to the federal court by the defendant who, after removal, answered in denial of plaintiff's claim and filed a cross-complaint praying judgment for $1,700 and for establishment of a lien. The suit was in equity. On filing of the cross-complaint, the plaintiff dismissed his bill and thereafter attacked the jurisdiction of the court to proceed on the cross-complaint on the ground that the amount involved therein did not exceed $2,000 (the then jurisdictional amount). The Supreme Court, in upholding the right of the trial court to proceed to judgment on the cross-complaint, stated: "In the first place, the whole record being considered, the value of the matter in dispute might well have been held to exceed $2,000, exclusive of interest and costs." Citing several cases, including Stinson v. Dousman, 20 How. 461, 466, 15 L.Ed. 966. "In the second place", says the Court, "it is the general rule that when the jurisdiction of a circuit court of the United States has once attached it will not be ousted by subsequent change in the conditions." This latter proposition is then discussed and a

reading of the opinion leads to the conclusion that it was upon this well determined rule that the action of the court really rested.

Because Kirby v. American Soda, etc., Co. cites Stinson v. Dousman, and because the latter case is often independently cited as authority for defendants contentions, it seems well to analyze that case: In Stinson v. Dousman, the parties had entered into a contract for the sale of certain land for $8,000, to be paid in three installments bearing interest. The contract contained provisions for protection of the property of which the vendee was placed in possession, and provided that if the vendee failed to perform the covenants undertaken by him, the vendor might cancel the contract and repossess the premises and might recover any unpaid interest on the purchase price as rent for the use and occupancy of the premises. The vendee being in default, the vendor gave notice of cancellation of the contract and brought suit for $481.16 as being due for rent until the date of cancellation. The defendant interposed an answer under the provisions of a Minnesota statute requiring that all equitable defenses or claims or demands in favor of a defendant be interposed in an answer in the nature of a counterclaim. In this he sought to deny or excuse his alleged default and also prayed for a decree affirming the continuing validity of the contract of sale. The courts of Minnesota (then a territory) having denied the sufficiency of the defenses offered and rendered judgment in favor of the plaintiff vendor, a writ of error took the case to the Supreme Court of the United States. The opinion in that court (by Mr. Justice Campbell) says:

"The defendant in error objected, that the matter in dispute was not of the value of one thousand dollars, and therefore this court has no jurisdiction of the cause. The objection might be well founded, if this is to be regarded merely as an action at common law.

"But the equitable as well as the legal considerations involved in the cause, are to be considered. The effect of the judgment is to adjust the legal and equitable claims of the parties to the subject of the suit.

"The subject of the suit is not merely the amount of rent claimed, but the title of the respective parties to the land under the contract. The contract shows that the matter in dispute was valued by the parties at eight thousand dollars. * * * We think this court has jurisdiction."

It will be noted that this case involved no question of removal, but related to jurisdictional amount on appeal as determined by a cross-claim already tried and determined in the lower court. The principle is the same as is involved in Ryan v. Bindley and Dushane v. Benedict, hereinbefore referred to. It is also to be noted that the quotation above set out is the same language quoted in the opinion in Kirby v. American Soda, etc., Co. and upon which the court apparently relies; that emphasis is placed on the fact that equitable claims of the parties were involved and the intimation is strongly made that a different view would prevail where the action was purely at law. Neither of these cases can be taken as authority for the proposition that in case of a cross-claim, purely legal, the amount of defendant's claim is to be considered, either alone or in conjunction with that of plaintiff, in determining the right of a defendant to remove. On the contrary, in Kirby v. American Soda, etc., Co. it is made clear that at the time of removal the plaintiff's claim alone exceeded the required amount—that removal was on that ground.

The case of Clarkson v. Manson, C.C.N. Y., 4 F. 257, decided in 1880, is cited by defendants and, on the surface, would appear to support their position. In this case, the plaintiff brought suit in the state court for $195 on a contract. The defendant, acting under provisions of a New York statute, answered in denial of the complaint and set up a counterclaim for $750. The plaintiff answered the counterclaim. The defendant sought and obtained removal to the federal court on diversity of citizenship (the jurisdictional amount then being $500). On a motion to remand, the court justified removal on the ground that the counterclaim and the answer thereto constituted a dispute involving the jurisdictional amount. However, it is clear from the opinion that the court adopted the view that the counterclaim was, in effect, a separate suit in which the original defendant became plaintiff (a theory hereinafter discussed) and that it was this suit which furnished grounds for removal and that it was removable because, under the act of 1875, so the court says, *either* the plaintiff or the defendant might remove, a condition which does not obtain today; for the

present statute clearly limits the right of removal to defendants.

Lee v. Continental Ins. Co., C.C.Utah, 74 F. 424, 425, was a case brought in a state court for less than the amount necessary to federal jurisdiction and was met by a counterclaim in an amount sufficient to create the removable amount. On a motion to remand, it was held that the counterclaim should be considered in determining the amount in dispute. The court, noting the conflict of opinion on the subject, pointed out that under the Utah statute, the defendant was required to assert its counterclaim or be barred from thereafter asserting any action on it. And it was this fact which inclined the court to hold that, "The matter in dispute * * * is not only the $1,000 which the plaintiff sues for, but it is that which, *of necessity,* under the statute in question, *must be litigated* in connection with it" (italics supplied). This reasoning, of course, does not apply to the instant case where, under the Virginia statute, the assertion of a counterclaim is entirely optional and, if filed, is the voluntary act of the defendant.

### The Authority Against Removal.

In considering the reasons which oppose the defendants' right to remove, it may first be pointed out that the jurisdiction of the federal court in cases of diversity of citizenship was founded on the belief that it would be a more impartial and unprejudiced forum than a court of a state of which one of the litigants was a citizen. In the early days of the republic when the sense of state sovereignty flourished, when antagonisms and jealousies existed among the states, when freedom of travel from state to state was more restricted, this was a consideration of greater importance than now. And it is notorious that Congress has from time to time restricted this jurisdiction, without altering the theory on which it is based. It has, by increasing the amount necessary to give federal jurisdiction, limited the cases in the federal courts to those involving substantial amounts. And, which is more significant from the standpoint of the theory on which the jurisdiction rests, it has now limited the right of removal from a state to a federal court to nonresident defendants only.

The present removal statute, 28 U.S.C.A. § 71, being substantially the Act of March 3, 1887, after providing for removal of suits involving question of federal law, provides that "Any other suit of a civil nature * * * of which the district courts of the United States are given jurisdiction * * * may be removed * * * by the *defendant* or *defendants* therein, being *nonresidents* of that State". And where removal is sought on the specifically alleged ground of prejudice or local influence. The right of removal is still confined to "any *defendant,* being such *citizen* of *another State*" (Italics supplied). The reason for restricting the right of removal to non-resident defendants is obviously because a plaintiff, having voluntarily invoked the local jurisdiction, is not thereafter entitled to remove; and a resident, no matter whether plaintiff or defendant, has no reason to anticipate that his local court will be a hostile forum as to him. These underlying principles, and the reasons therefor, governing the right of removal must be constantly borne in mind in any approach to questions involving that right. They are continually noted in the very considerable wealth of authority which goes to deny the proposition advanced by the defendants here. The basic reasoning is that the right of removal is for the benefit of non-resident defendants who have been brought into a local court against their will, but does not extend to litigants who by their own affirmative and voluntary act have invoked the jurisdiction of the state court. In other words, where one is made a defendant in a suit in a state court in an amount insufficient to give federal jurisdiction he cannot, by filing a counterclaim in a sufficient amount, thereafter seek removal on the basis of a claim which has been brought into the litigation by his voluntary act. Out of this has grown what is sometimes referred to as the *plaintiff-viewpoint* theory which regards the counterclaimant as in the position of plaintiff as to the counterclaim.

In Falls Wire Mfg. Co. v. Broderick, C.C.Mo.1881, 6 F. 654, the plaintiff's suit in the state court was for less than the removable amount; a counterclaim for the necessary amount was filed by defendant who removed to the federal court. On motion to remand, the court held that the counterclaim was not to be considered in determining the amount necessary to federal jurisdiction. It noted that Clarkson v. Manson, supra (then recently decided), had held otherwise but pointed out that under the interpretation in that case any

defendant could create federal jurisdiction and accomplish removal by the device of filing a counterclaim no matter how ill-grounded or lacking in merit.

In Bennett v. Devine, C.C.Iowa 1891, 45 F. 705, the same situation existed, and of it the court (Shiras, J.) said: "So far as the counter-claim is concerned, the party seeking the removal is the plaintiff therein, and the right of removal does not exist in favor of a plaintiff or party who has voluntarily invoked the jurisdiction of the state court."

In McKown v. Kansas & Texas Coal Co., C.C.Ark.1901, 105 F. 657, the counterclaim was interposed under a statute which (as in Virginia) made such interposition optional with defendant. The case was remanded on the ground that the suit as originally brought determined the right to remove and the optional feature of the statute was referred to, it also being suggested that the rule might be different in states where pleading the counterclaim was compulsory. This latter is the element distinguishing Lee v. Insurance Co., supra.

In Hansen v. Pacific Coast Asphalt, etc., Co., D.C.Cal., 243 F. 283, 284, the defendant contemporaneously with filing a cross-complaint in the state court filed its petition for removal. In remanding the case, the court, recognizing the status of the parties as respects the cross-complaint, said: "Only the defendant has a right to remove a case from a state court to this court. Judicial Code, § 28 [28 U.S.C.A. § 71]. The question presented upon this motion to remand is whether or not the case was removed here by a defendant. * * * The defendant becomes a plaintiff to all intents and purposes by filing a cross-complaint. When the action is removed, it carries the whole record. That would bring with it the action which the defendant instituted, and, if he is allowed to remove under such circumstances, it would be allowing the plaintiff to remove an action, instead of limiting the right of removal to a defendant. By filing this cross-complaint, the defendant became a plaintiff, and invoked the jurisdiction of the court, and thereby deprived itself of the right to remove."

In this case, the court refers to the fact that defendant could have removed the case without filing any pleading in the state court and the holding would seem to be based, not on the question of juris-

dictional amount as affected by a counterclaim, but on the fact that defendant sought removal of a suit wherein, in one phase at least, it was plaintiff and had itself invoked the jurisdiction of a local court. If this view is correct, the reasoning would apply even more strongly where the condition necessary to removal, i. e. the jurisdictional amount, was created solely by the counterclaim.

In Dobie on Federal Procedure (Sect. 56), the author discusses at some length the question of the effect of a counterclaim upon the "amount in controversy", citing the numerous decisions. Referring to the conflicting authority, he concludes that in arriving at the amount in controversy "the counterclaim is no part of the right asserted by the plaintiff and should not be considered. * * * To permit the defendant, by his own affirmative act, to confer the jurisdiction thus lacking, would seem to be opposed to the whole spirit of the federal judicial system. * * * The defendant can assert his counterclaim in a separate suit; he merely sets it up in the instant suit for convenience. The counterclaim clearly bears no essential relation to the right claimed by the plaintiff; the defendant, not the plaintiff, brings it into the litigation."

There are a number of cases in which the court has declined to adopt the theory that the defendant becomes a plaintiff as to a counterclaim, but has nevertheless denied removal on the ground that the jurisdictional amount is to be determined from the initial pleading, i. e. from the plaintiff's claim, and cannot be affected by a counterclaim. Among these are LaMontagne v. T. W. Harvey Lumber Co., C.C.Wis., 44 F. 645, 646, where the court, reciting that "Whatever causes of action may be permitted to be alleged against the plaintiff, he still remains the plaintiff upon the record; his antagonist, the defendant", nevertheless holds that jurisdiction cannot be conferred by filing a counterclaim, for the reason that the "amount in dispute" is that existing at the commencement of the suit. See also Harley v. Firemen's Fund Ins. Co., D.C.Wash., 245 F. 471.

The question of removal has been frequently before the courts in a situation the converse of that offered here; that is, cases where a non-resident, having a claim less than was necessary to give federal jurisdiction, sued the defendant in the

latter's local court and where the resident defendant interposed a counterclaim in an amount sufficient to give federal jurisdiction. There is a substantial line of decisions holding that in such case the original plaintiff became a defendant as to the counterclaim and, being a non-resident, was entitled to remove the case. Among the first of these cases is Carson & Rand Lumber Co. v. Holtzclaw, C.C.Mo., 39 F. 578, 579, where it is held that "a non-resident plaintiff, suing in the state court, against whom a counter-claim is brought, is a 'defendant' within the provisions of said act [Act of Mar. 3, 1887, 24 U.S. Stat. 553, 28 U.S.C.A. § 71], which limits the right of removal to the 'defendant being * * * a citizen of another state' than that in which the suit is brought".

To the same effect are Walcott v. Watson, C.C.Nev., 46 Fed. 529; Price & Hart v. T. J. Ellis & Co., C.C.Ark., 129 F. 482; Hagerla v. Mississippi River Power Co., D.C.Iowa, 202 F. 771. Among the later cases adopting this rule are San Antonio, etc., Farms v. Shandy, D.C.Kan., 29 F.2d 579; Grovesville Sales Corp. v. Stevens, D.C.N.J., 16 F.Supp. 563; American Fruit Growers v. LaRoche, D.C.S.C., 39 F.2d 243; Pierce v. Desmond, D.C.Minn., 11 F.2d 327; O'Neill Bros. v. Crowley, D.C. S.C., 24 F.Supp. 705; C. I. T. Corp. v. Ambrose, D.C.S.C., 36 F.Supp. 311.

Some of the later cases suggest that in determining the status of the litigants as affected by a counterclaim it is pertinent to examine the conclusions of the state courts on that question as shown in their interpretation of the statute governing counterclaims. Thus in O'Neill v. Crowley, supra, 24 F.Supp. at page 706, it is pointed out that under the state law a counterclaimant is held to be in fact a plaintiff as regards his demand. While I do not consider that this is determinative, it appears that a similar view is taken by the Virginia courts. I find no decision in express language; but in Huffman v. Jackson, decided June, 1940, 175 Va. 564, 9 S.E.2d 295, which involved cross-actions for damages in an automobile accident (the identical situation of the instant case) and in which judgment had been obtained by the original plaintiff, the Supreme Court of Virginia pointed out the necessity of entering final judgments as to both claims and directed that this be done; thereby intimating that they were to be considered as separate actions in which the status of the parties was reversed.

The theory on which these cases rest has met with opposition in some of the less recent cases. See Waco Hardware Co. v. Michigan Stove Co., 5 Cir., 91 F. 289, and Glover Machine Works v. Cooke Jellico Coal Co., D.C.Ky., 222 F. 531, which hold the view that a plaintiff in a state court who is subjected to a counterclaim remains a plaintiff and does not become a defendant within the meaning of the removal statute. These cases rely on West v. Aurora City, 6 Wall. 139, 18 L. Ed. 819, which is frequently cited in cases dealing with this question. In this case, plaintiffs, citizens of Ohio, brought suit against the city of Aurora, Indiana, in a court of the latter state. In addition to denial of plaintiffs' claims, the defendant set up further defensive matter which included a prayer for an injunction. Plaintiffs discontinued their suit and, on the theory that the answer was in effect a new suit against them, petitioned for removal to the federal court. A remand of the case was upheld, the Supreme Court holding that the counter-action was not a new suit within the meaning of the removal statute. The line of cases which have heretofore been cited have not overlooked West v. Aurora, but have differentiated it, and I think successfully. The case was decided under the Act of 1789, 28 U.S.C.A. § 71 note, which granted the right of removal only to a defendant who had not submitted to the jurisdiction of the state court and when application for removal had to be made *at the time of entering an appearance*. The amount in controversy was such as that the plaintiffs might have resorted to the federal court in the first instance and they had voluntarily invoked the jurisdiction of the state court. See 22 Ind. 88, 85 Am.Dec. 413. In addition, the court (6 Wall. at page 141, 18 L.Ed. 819) states that the answer on which removal was sought was in the nature of a defense, coupled with prayer for an injunction. A reading of the opinion shows that denial of the right to remove was based on the ground that plaintiffs had voluntarily invoked the jurisdiction of the state court and that, having done so, they were not entitled to remove on the filing of an answer denying liability and setting up other matter pertinent to plaintiffs right to sue, for these matters, being defensive, were to be anticipated when the suit was brought.

The distinction between this case and those heretofore cited is, I think, plain. In any event, it seems now to be reasonably well established that where a non-resident has resorted to a state court because the amount of his claim requires it, he is not denied the right of removal as to a counterclaim filed against him involving an amount sufficient to give federal jurisdiction. See cases hereinbefore cited.

The logic of this principle is based on the purpose of the removal statute, namely, to give a non-resident defendant who has, against his will, been brought in a state court, the right to remove to the supposed unprejudiced forum of the federal court; but to deny that right to a plaintiff, or any party of like status, who has voluntarily invoked or willingly submitted to the jurisdiction of the state court. With this principle in mind, it is evident that in the instant case the cross demand, without which the jurisdictional amount necessary to give this court jurisdiction would not exist, was brought into being by the voluntary act of the defendants; that as to it, the jurisdiction of the state court was invoked by them; that they are in effect plaintiffs who have not only denied liability on their part but have sought affirmative relief in the state court.

■ Because an order remanding a case is not reviewable, 28 U.S.C.A. § 71, there is a dearth of authority in the appellate federal courts on the question involved here. But we find in Merchants' Heat & L. Co. v. James B. Clow & Sons, 204 U.S. 286, 27 S.Ct. 285, 286, 51 L.Ed. 488, a very direct statement as to the status of a defendant who files a counterclaim. That suit was instituted, on a contract, in the federal court in Illinois by a corporation of that state against an Indiana corporation. The defendant moved to quash the return of service and, this being overruled, pleaded the general issue and a recoupment or set-off under the same contract. The case went to the Supreme Court on the question of whether jurisdiction had been obtained by legal service of process on defendant. The court (Mr. Justice Holmes) found it unnecessary to decide this question, saying:

"We assume that the defendant lost no rights by pleading to the merits, as required, after saving its rights. Harkness v. Hyde, 98 U.S. 476, 25 L.Ed. 237; Southern Pacific Co. v. Denton, 146 U.S. 202, 13 S.Ct. 44, 36 L.Ed. 942. But by setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action, and, by invoking, submitted to it. It is true that the counterclaim seems to have arisen wholly out of the same transaction that the plaintiff sued upon, and so to have been in recoupment rather than in set-off proper. But, even at common law, since the doctrine has been developed, a demand in recoupment is recognized as a cross demand, as distinguished from a defense. Therefore, although there has been a difference of opinion as to whether a defendant, by pleading it, is concluded by the judgment from bringing a subsequent suit for the residue of his claim, a judgment in his favor being impossible at common law, the authorities agree that he is not concluded by the judgment if he does not plead his cross demand, and that whether he shall do so or not is left wholly to his choice. Davis v. Hedges, L. R. 6 Q. B. 687; Mondel v. Steel, 8 M. & W. 858, 872; O'Connor v. Varney, 10 Gray [Mass.] 231. This single fact shows that the defendant, if he elects to sue upon his claim in the action against him, assumes the position of an actor and must take the consequences. The right to do so is of modern growth, and is merely a convenience that saves bringing another suit, not a necessity of the defense.

\* \* \* \* \* \* \*

"There is some difference in the decisions as to when a defendant becomes so far an actor as to submit to the jurisdiction, but we are aware of none as to the proposition that when he does become an actor in a proper sense he submits. De-Lima v. Bidwell, 182 U.S. 1, 174, 21 S.Ct. 743, 45 L.Ed. 1041, 1047; Fisher v. Shropshire, 147 U.S. 133, 145, 13 S.Ct. 201, 37 L.Ed. 109, 113; Farmer v. National Life Association, 138 N.Y. 265, 270, 33 N.E. 1075. As we have said, there is no question at the present day that, by an answer in recoupment, the defendant makes himself an actor, and, to the extent of his claim, a cross plaintiff in the suit. See Kelly v. Garrett, 6 Ill. 649 [1 Gilm., 649], 652; Ellis v. Cothran, 117 Ill. 458, 461, 3 N.E. 411; Cox v. Jordan, 86 Ill. 560, 565."

And see Lewis Mercantile Co. v. Klepner, 2 Cir., 176 F. 343.

Some of the cases, based probably on the language of West v. Aurora, supra, have discussed the distinction between

counterclaims or cross suits which set up defensive matter only and those seeking affirmative relief or a recovery over, as affecting the status of the parties. But Merchants' Heat & L. Co. v. James B. Clow & Sons, supra, would seem to settle the propriety of the view that any counterclaim, whether it be called recoupment, set-off, cross demand or what not, and even if it arise out of the same transaction, which goes beyond denial of plaintiff's claim and seeks recovery over, is not a mere defense but an affirmative action as to which the counterclaimant is plaintiff; at least in those cases where the interposition of the counterclaim is at the option of defendant.

■ It is insisted by defendants that their claims and that of the plaintiff are such as that one suit must necessarily determine both; that the question is which party to the automobile accident was negligent and therefore liable to the other; that this is not the ordinary situation where one litigant may recognize the justice of his opponent's claim while at the same time asserting a claim of his own in set-off or mitigation of that asserted against him. That it is impossible for both parties to have legal claims; that in any hearing of the controversy one or the other must be held to recover on a just claim while the other will be found to be due nothing. That they cannot, as might the ordinary defendant having a claim against the plaintiff, either assert it as a counterclaim in the pending suit or withhold it for an independent and future action; that any trial of the case will of necessity finally determine all matters in controversy by adjudicating the responsibility for the accident. I cannot see that this argument changes the situation. The peculiar factual situation does not enlarge the legal rights of defendant or the limitations upon them. That the defendants could have asserted their cross demand by an independent action is shown by the fact that they did so by their suits in this court. And the fact remains that as to the particular suit now in question, i. e. the suit removed from the state court, the issue which was the basis of removal, namely, the claim of defendants against the plaintiff, was one as to which the defendants themselves voluntarily invoked the jurisdiction of the state court. That they did this solely for the purpose of creating a removable controversy does not alter the effect of this voluntary and affirmative action on their part. Whatever effect a trial in the state court, if one is had, may have on the suits pending here, is a matter not now before this court.

### Effect of Appearance by Defendants in the State Court.

The second ground on which the motion to remand is based, namely, that when defendants filed their counterclaims in the state court they submitted themselves to that jurisdiction and waived any right to removal which they might have had, is so closely related to the matter hereinbefore discussed as to require little more to be said.

Of course, the defendants had no semblance of a right to remove except by virtue of their counterclaims. Until then the only amount in controversy was $2,500, the amount of plaintiff's claim. By filing the counterclaims they did not waive a right to removal previously existing—for none existed. What they did was to create a controversy involving the jurisdictional amount by invoking the jurisdiction of the state court on their claims. And having voluntarily taken this affirmative action they could not then remove a controversy of their own creation.

It is not necessary to consider whether that portion of the removal statute, 28 U.S.C.A. § 72, which provides that a petition for removal may be filed "at the time, or any time before the defendant is required to answer or plead", is to be interpreted as meaning that a defendant who enters a plea in the state court thereby waives the right of removal, or whether he may plead and at the same time petition for removal. So far as defendants plea is confined to a mere denial of the plaintiffs claim, we will assume that he waives no right by filing it simultaneously with the petition to remove. Brisenden v. Chamberlain, C.C.S.C., 53 F. 307, 311, 312; Champlain Const. Co. v. O'Brien, C.C.Vt., 104 F. 930. But this is an entirely different situation from that where a defendant, as here, voluntarily invokes the jurisdiction of the state court by seeking its affirmative aid in his behalf.

The conclusion reached that the counterclaimants were not entitled to remove, makes it unnecessary to discuss the effect of Jay P. Altmayer's failure to unite in the petition for removal. It is evident that this non-joinder was due to the fact that his counterclaim is less than $3,000, and it was thought that he was not entitled

to remove. This only emphasizes the fact that the controversy in which the jurisdictional amount is involved and which is sought to be removed is one in which the amount in controversy was created by the action of the petitioning defendants in filing their counterclaims.

For the reasons stated, the motion to remand will be granted.

## The Motions to Dismiss the Suits Pending in This Court.

The fact that it is necessary to remand to the state court the action of Haney v. Wilcheck et al. does not, however, call for the dismissal of the actions instituted in this court in which Haney is the defendant. The motion to that effect is based on the contention that the same cause of action is involved in the suit which is being remanded.

The motion cannot be granted. Wilcheck and the Altmayers, being citizens and residents of states other than Virginia, had the right to bring suits against Haney in the federal court and this court cannot deny them that right just as it cannot deny Haney the right to sue in the state court. It is well settled that actions in personam, as for damages arising out of a tort, growing out of the same transaction and involving the same parties, may be brought in both a state and a federal court, without either ousting the jurisdiction of the other. Baltimore & O. Ry. Co. v. Wabash Ry. Co., 7 Cir., 119 F. 678. A comprehensive discussion of this principle is to be found in Kline et al. v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077. The entire opinion is pertinent to the arguments that have been advanced here, but space permits only partial quotation of it. After noting the rule as to conflicting jurisdictions in proceedings in rem, the court says (page 230 of 260 U.S., page 81 of 43 S.Ct.) : "But a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case. The rule, therefore, has become generally established that where the action first brought is in personam and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded."

In that case it was urged that if the suit pending in the state court were allowed to proceed to an adjudication before the federal court action was adjudicated, the latter's adjudication would be futile because the controversy would have become res adjudicata by the judgment of the state court; and that this would deprive the plaintiff who had sued in the federal court of his constitutional right to have the matter tried there. The Supreme Court, after stating that the right of a litigant to sue in the federal court on the ground of diversity of citizenship was not a constitutional right but a statutory one, says: "The Construction Company, however, had the undoubted right under the statute to invoke the jurisdiction of the federal court and that court was bound to take the case and proceed to judgment. It could not abdicate its authority or duty in favor of the state jurisdiction. Chicot County v. Sherwood, 148 U.S. 529, 533, 13 S.Ct. 695, 37 L.Ed. 546; McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762. But, while this is true, it is likewise true that the state court had jurisdiction of the suit instituted by petitioners. Indeed, since the case presented by that suit was such as to preclude its removal to the federal jurisdiction, the state jurisdiction in that particular suit was exclusive. It was, therefore, equally the duty of the state court to take the case and proceed to judgment."

If the motion to dismiss these suits is based solely on the ground that the plaintiffs therein have, by filing their counterclaims to Haney's suit, put their claims in issue in both courts and are in effect plaintiffs prosecuting their actions in both jurisdictions, the results are the same and the principles set out in Kline v. Burke Construction Company still apply. See W. E. Stewart Land Co. v. Arthur, 8 Cir., 267 F. 184, 185 (cited in Kline v. Burke Constr. Co.), where a plaintiff sued for a money recovery in the federal court in

Iowa and later sued on the same cause of action in the state court of Oklahoma. Of this the court says: "The pendency of two or more such actions [in personam] between the same parties upon the same causes of action in different jurisdictions gives to the court in which the first was brought no power to enjoin the prosecution of the others. Each may take its normal course."

And in Barber Asphalt Co. v. Morris, 8 Cir., 132 F. 945, 947, 67 L.R.A. 761, it is said: "The general rule upon this subject has been so clearly announced and so often affirmed * * * that it is no longer open to debate or consideration. It is that the pendency in a state court of an action brought by the plaintiff in a subsequent action between the same parties in the federal court, and which involves the same subject-matter, presents no bar and furnishes no ground for the abatement of the later action." Citing cases.

The motion to dismiss the cases pending here will be denied.