**WHEATLEY v. MARTIN.**
Civil Action No. 181.

District Court, W. D. Arkansas,
Hot Springs Division.
Aug. 31, 1945.

See also Martin v. Wheatley, 62 F. Supp. 104.

Richard M. Ryan and James R. Campbell, both of Hot Springs, Ark., for plaintiff.

C. Floyd Huff and Scott Wood, both of Hot Springs, Ark., for defendant.

JOHN E. MILLER, District Judge.

On June 27, 1945, the plaintiff, Erb O. Wheatley, filed his complaint in the Garland Circuit Court at Hot Springs, Arkansas, against the defendant, Ora C. Martin, seeking a recovery of a judgment in the sum of $1500, with interest and costs.

The plaintiff alleged that on June 9, 1945, he advanced to the defendant the sum of $1500 and the defendant gave him her check for said amount drawn on the Arkansas Trust Company, a banking corporation, located in Hot Springs, Arkansas; that prior to the presentation of the check by the plaintiff to the bank for payment, the defendant with intent to cheat and defraud the plaintiff, wrongfully withdrew her funds from said bank.

The plaintiff is a resident of the city of Hot Springs, Garland County, Arkansas, and the defendant is a nonresident of the State, being a citizen and resident of the State of Florida.

A general attachment was issued and served upon the defendant in the city of Hot Springs on the date the complaint was filed. Attachment was issued upon the affidavit of the plaintiff that the defendant is a nonresident of Arkansas and that she had sold, conveyed or otherwise disposed of her property within the State with the fraudulent intent to cheat, hinder and delay her creditors in collection of their debts.

Within the time permitted by law to plead to the complaint, the defendant, on June 16, 1945, filed her answer and counterclaim. In the answer the defendant alleged that she had theretofore filed an action in the District Court of the United States for the Western District of Arkansas, Hot Springs Division, seeking a judgment against the plaintiff, Erb O. Wheatley, in the sum of $4300, which sum of money the defendant alleged had been lost by her and won by the plaintiff in a series of gambling transactions conducted by the plaintiff in the city of Hot Springs, Arkansas. She denied that plaintiff cashed her check on the 9th of June 1945, but alleged that on June 8, 1945, the plaintiff did cash her check in the sum of $1500, and that subsequently thereto she withdrew her funds from the bank before the plaintiff had presented the check for payment.

That the plaintiff was the owner and operator of a common gambling house known as the Reno Club, and at the time the check was cashed by the plaintiff for the defendant it was cashed in the plaintiff's gambling house and the plaintiff well knew that the defendant was to use the said $1500 for the purpose of gambling therein; that the defendant lost the said $1500 to the plaintiff in a gambling game known as Twenty-one or Blackjack, and the plaintiff, his agents and employees, won said sum of money from the defendant in a game of chance; that the plaintiff prior to June 8, 1945, had cashed other checks for the defendant at his gambling house and the money obtained on said other checks was used by the defendant in gambling in the plaintiff's gambling house.

That jurisdiction of the action heretofore filed by the defendant in the United States District Court rests on the ground of diversity of citizenship, and the defendant herein in said action seeks to recover from the plaintiff herein the sum of $4300; that the answer and counterclaim filed by the defendant herein are filed for the purpose of placing of record the jurisdictional allegations for removal of this cause to the United States District Court, as aforesaid, to the end that this suit may be consolidated with the cause of action then pending in the United States District Court.

In the counterclaim the defendant alleged that she is a resident of the State of Florida and that the plaintiff is a resident of the State of Arkansas, domiciled in the Western Division of the Western District of Arkansas.

That the counterclaim is brought under and by virtue of Section 6112 of Pope's Digest of the Statutes of Arkansas and that between the dates of May 12, 1945, and June 9, 1945, the plaintiff herein won from the defendant and the defendant lost to the plaintiff, his agents and employees, by gambling in the gambling house known as Reno Club, owned and operated by the plaintiff, in the city of Hot Springs, Arkan-

sas, the total sum of $5800; that on the night of June 8, 1945, at the plaintiff's gambling house the plaintiff cashed for the defendant a check in the sum of $1500, drawn on the Arkansas Trust Company, as aforesaid, and that the plaintiff well knew at the time he cashed said check that the defendant was to use the money for the purpose of gambling at and in the plaintiff's gambling house.

At the time the check was cashed by the plaintiff for the defendant there were ample funds on deposit in the bank on which the check was drawn to pay the same, but on the morning of June 9, 1945, following the night of June 8th, the defendant withdrew from said bank her funds, not leaving a sufficient amount therein with which to pay the said check; that excluding the check of $1500 the defendant lost a net total of $4300 to the plaintiff in the plaintiff's gambling house in a game commonly referred to as Twenty-one or Blackjack.

The prayer of the answer and counterclaim is that the plaintiff take nothing by reason of his suit herein and that the defendant have and recover judgment against the plaintiff for the sum of $4300, with interest and costs.

Simultaneously with the filing of the answer and counterclaim, the defendant, in accordance with notice served upon the attorneys for the plaintiff on July 11, 1945, filed her petition and bond for removal of this cause to this court. Attached to the petition as an exhibit thereto is a copy of the complaint filed by the defendant here as plaintiff in this court against the plaintiff here as defendant seeking a recovery from the plaintiff here of a judgment of $4300.

In the petition for removal the defendant alleges that the time to plead, answer or demur to the complaint has not expired under the laws of the State of Arkansas; that the suit is one of a civil nature of which the United States District Court has jurisdiction and is for the recovery of money advanced by plaintiff to defendant upon defendant's check drawn on the Arkansas Trust Company of Hot Springs, Arkansas, the payment of which check had been refused by the bank; that the defendant and petitioner herein has filed simultaneously with the petition for removal her answer and counterclaim seeking to recover from plaintiff herein a judgment for the sum of $4300; that the matter in dispute exceeds the sum of $3000, exclusive of interest and costs; that the plaintiff herein is a citizen and resident of the Hot Springs Division of the Western District of Arkansas and the defendant is a citizen and resident of the State of Florida.

The plaintiff filed a response to the answer and counterclaim on July 16, 1945, the date of the filing of the answer and counterclaim and petition and bond for removal. In the response to the answer and counterclaim the plaintiff denies that he knew that the defendant would use the $1500 for the purpose of gambling, and denies that the plaintiff lost the sum of $1500 to the plaintiff in a gambling game known as Twenty-one or Blackjack on the night of June 8, 1945, or at any other time, and denies that he cashed checks for the defendant at his gambling house prior to that time for the purpose of permitting the plaintiff to gamble therein; denies that the defendant between May 12, 1945, and June 9, 1945, lost to the plaintiff, his agents and employees by gambling at a game known as Twenty-one or Blackjack the sum of $1500 or any other sum.

The prayer of the response of plaintiff to the answer and cross-complaint of the defendant is that the defendant recover nothing by reason of her answer and cross-complaint and that he have judgment for $1500, with interest and costs.

On the same day the various pleadings referred to herein were filed the Circuit Court entered an order approving the petition and bond and removed the case to this court.

A transcript of the proceedings was filed herein on July 24, 1945, and on the same date the plaintiff, Erb O. Wheatley, filed his motion to remand, in which he denies (1) that this is a suit of a civil nature either at law or in equity, (2) that the defendant has a counterclaim in the sum of $4300 against him or that the matter in dispute exceeds the sum of $3000, exclusive of interest and costs.

The plaintiff admits that he is a citizen and resident of Hot Springs, Arkansas, but states in his motion that he is not possessed of sufficient information as to whether the defendant at the time of the commencement of this action or now is a resident and citizen of the State of Florida; admits that the defendant, Ora C. Martin, had theretofore filed in this court a suit to recover from him the sum of $4300, alleged

to be due for money lost by the defendant and won by him in a gambling game known as Twenty-one or Blackjack.

The plaintiff further alleges that this court has no jurisdiction of the cause of action stated in the complaint filed by him in the Garland Circuit Court; that the counterclaim set forth by the defendant in the Garland Circuit Court is not a suit of a civil nature either at common law or in equity and does not give this court jurisdiction; that the defendant is now barred from removing this cause from the Garland Circuit Court because of the filing by her in the Garland Circuit Court of her answer and counterclaim.

The attorneys for the respective parties have filed written briefs in support of their contentions herein, which briefs have been carefully considered by the court, along with the record in this case as well as the record in the original suit filed by the defendant herein as plaintiff against the plaintiff herein as defendant.[1]

The learned attorneys for the plaintiff, in their argument in support of the motion to remand, state:

"The only questions before the court are whether or not the defendant by answering in said court (the Garland Circuit Court) and filing a setoff or counterclaim would be entitled to remove this cause to the United States District Court; and the further question as to whether or not this court has jurisdiction over the cause of action filed in the Garland Circuit Court and the action which was filed by Mrs. Martin in the United States District Court."

■ As stated in Footnote 1, the court has already determined that it has jurisdiction of the parties and the subject matter of the original action filed in this court by the defendant herein, Mrs. Martin, as plaintiff, and no further reference need be made to that contention of the plaintiff herein.

■ In the motion to remand the plaintiff apparently tries to raise the question as to whether the defendant is a nonresident of Arkansas, but in the complaint filed in the Garland Circuit Court the plaintiff swore that the defendant was a nonresident of the State and that she was about to remove or had removed her property or a material part thereof from the State with the fraudulent intent to cheat, hinder and delay her creditors in the collection of their debts. Therefore the plaintiff cannot now be heard to say that defendant is not in fact a nonresident of Arkansas.

■ The right of removal from a State court to a United States District Court exists only in certain enumerated classes of cases. The statute, Section 28 of the Judicial Code, as amended, 28 U.S.C.A. § 71, confines this right to "the defendant or defendants therein, being nonresidents of the State." Shamrock Oil & Gas Corporation v. Sheets et al., 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214.

■■ In Heer Dry Goods Co. v. Shaffer, 51 Ark. 368, 11 S.W. 517, the Supreme Court of Arkansas held that where a counterclaim or setoff is filed by a defendant, the relation of the parties in the action is reversed and the defendant is plaintiff and vice versa. The plaintiff contends that when the defendant filed her answer and counterclaim in the Garland Circuit Court that she thus became the plaintiff in so far as her counterclaim against the plaintiff herein is concerned, and that the right of removal does not extend to a party who thus becomes a plaintiff.

In the Shamrock Oil & Gas Corporation case, supra [313 U.S. 100, 61 S.Ct. 870], the court said:

---

[1] The original suit was filed July 6, 1945, by Ora C. Martin as plaintiff, a resident and citizen of Florida against the defendant, Erb O. Wheatley, a resident and citizen of Arkansas, seeking to recover the total sum of $4300 alleged to be the net amount of the plaintiff's losses in games of chance conducted by the defendant at a common gambling house owned and operated by the defendant in the city of Hot Springs, Arkansas. The defendant therein filed a motion to dismiss the complaint and alleged: (1) The pendency of the instant suit between the same parties involving the same controversy in the Garland Circuit Court; (2) that the defendant in that suit had filed an answer and counterclaim in the Garland Circuit Court as required by Section 1416 of Pope's Digest of the Statutes of Arkansas; (3) that the complaint is not based upon any alleged breach of common law duty and that the court is without jurisdiction to hear and determine the same.

The motion was duly argued upon written briefs and the court has on this date entered an order overruling the motion to dismiss and holding that the complaint states a cause of action and that this court has jurisdiction of the parties and the subject matter.

"But at the outset it is to be noted that decision turns on the meaning of the removal statute and not upon the characterization of the suit or the parties to it by state statutes or decisions."

The defendant in her answer and counterclaim stated:

"The answer and counterclaim are filed herein for the purpose of placing of record the jurisdictional requirements for removal of this cause to the United States District Court, as aforesaid, to the end that it may be consolidated with the cause of action now pending in the aforesaid United States District Court."

Under the provisions of Section 1416 of Pope's Digest of the Statutes of Arkansas, enacted February 19, 1935, the defendant was required to assert her counterclaim, or be barred from litigating all questions raised in her original suit in this court. The Supreme Court of Arkansas in construing this statute in the case of Morgan v. Rankin, 197 Ark. 119, 124, 122 S.W.2d 555, 558, 119 A.L.R. 1466, said:

"The statute (section 1416, Pope's Digest) provides that, 'in addition to the general denial above provided for, the defendant must set out in his answer as many grounds of defense, counterclaim, or set-off, whether legal or equitable, as he shall have. Each shall be distinctly stated in a separate paragraph, and numbered. The several defense(s) must refer to the causes of action which they are intended to answer in a manner by which they may be intelligibly distinguished.'

"The widow, as administratrix of her husband's estate, had the right, and we think was under the duty, of litigating, in the suit against her as administratrix, all the questions which she raised in the suit later brought for her personal benefit.

"If one participant in an automobile collision may, when sued by the other, waive the right to assert his own damages as a result of the collision and later sue for such damages in a separate suit, we may reasonably expect two suits in many of such cases, and a more prolific and profitable field of litigation will be opened up than existed in the case of suits by guests against their hosts, before the passage of our Guest Statute on that subject.

"We think the present cause of action was barred by the former suit, and the judgment here appealed from awarding damages to appellee will be reversed and the cause dismissed."

In Adams & Rusher v. Henderson, 197 Ark. 907, 910, 125 S.W.2d 472, 473, the same court said:

"The statute relied on is section 1416 of Pope's Digest which provides what 'the answer shall contain' in four paragraphs, the first and second not being applicable here. The third and fourth paragraphs are as follows: 'Third: A statement of any new matter constituting a defense, counter-claim or set-off, in ordinary and concise language, without repetition.

" 'Fourth: In addition to the general denial above provided for, the defendant must set out in his answer as many grounds of defense, counter-claim or set-off, whether legal or equitable, as he shall have. Each shall be distinctly stated in a separate paragraph, and numbered. The several defense(s) must refer to the causes of action which they are intended to answer in a manner by which they may be intelligibly distinguished.'

"It is insisted that, since the passage of act 54 page 124 of 1935 in which the word 'must' as used in paragraph four above was substituted for the word 'may' as used in the prior statute, it is imperative that a 'defendant must set out in his answer as many grounds of defense, counter-claim or set-off, whether legal or equitable, as he shall have.' If appellee had gone to trial in the Crawford Circuit Court, without pleading his cross-action by way of counter-claim or set-off, he would have undoubtedly been thereafter barred of his right to maintain his action in the Sebastian Circuit Court, if pleaded, as it would have been res adjudicata, as held in the recent case of Morgan v. Rankin [197 Ark. at page 119], 122 S.W. 2d 555, 558, 119 A.L.R. 1466, relied on by appellants."

The defendant did not voluntarily submit herself or her claim to the jurisdiction of the Garland Circuit Court as a defendant therein. She was required to set forth her counter-claim, which reveals an alleged sum of $4300 due her, a non-resident, by the defendant, a resident, growing out of and a part of the transactions upon which the plaintiff based his suit. Arkansas had the right under the power reserved to the States under the constitution to enact Section 1416, supra, and to require residents and nonresidents alike, when sued in her courts to make full disclosure of all defenses, counterclaims and set-offs, but by so doing the right of a nonresident defendant to removal and trial of the case in a Federal

Court is not abridged. The nonresident defendant remains a defendant with the right of removal as provided in the Federal Removal Statute. The Supreme Court of the United States in the Shamrock Oil & Gas Corporation case, supra, said:

"The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied. Hence the Act of Congress must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts. Cf. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199."

■ The right of the nonresident defendant to removal and to maintain her action in this court is not derived from the constitution. The right exists solely by virtue of the Act of Congress. Kline et al. v. Burke Construction Co., 260 U.S. 226, 227, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077. The court in discussing the question further on page 234 of 260 U.S., on page 83 of 43 S.Ct., 67 L.Ed. 226, 24 A.L.R. 1077, said:

"The Construction Company, however, had the undoubted right under the statute to invoke the jurisdiction of the federal court and that court was bound to take the case and proceed to judgment. It could not abdicate its authority or duty in favor of the state jurisdiction."

■ This court is required to recognize the State statute and leaves the court free to protect the right of a nonresident defendant to a removal of the suit to a Federal court. In the case of Guaranty Trust Co. of New York v. York, 65 S.Ct. 1464, 1469, the Supreme Court of the United States, in discussing the duty of Federal courts to recognize and enforce state law in diversity of citizenship cases, said:

"Here we are dealing with a right to recover derived not from the United States but from one of the States. When, because the plaintiff happens to be a nonresident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic. But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.

"And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?

"It is therefore immaterial whether statutes of limitations are characterized either as 'substantive' or 'procedural' in State court opinions in any use of those terms unrelated to the specific issue before us. Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487] was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. And so, putting to one side abstractions regarding 'substance' and 'procedure', we have held that in diversity cases the federal courts must follow the law of the State as to burden of proof, Cities Service Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196, as to conflict of laws, Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, as to contributory negligence, Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645, 144 A.L.R. 719. * * * Erie R. Co. v. Tompkins has been applied with an eye alert to essentials in avoiding disregard of State law in diversity cases in the federal courts. A policy so

important to our federalism must be kept free from entanglements with analytical or terminological niceties."

The court is not unaware of the well established general rule that jurisdiction depends on the amount in controversy, as stated in the original complaint filed in the State court and not the counterclaim of the defendant, nor by any contingent loss which either party may sustain through the indirect or collateral effect of the judgment. See Enger v. Northern Finance Corporation, D.C. Minn., 31 F.2d 136, and authorities cited therein by Judge Sanborn, now a Circuit Judge of the Eighth Circuit.

The rule that a nonresident defendant by voluntarily setting up a counterclaim when sued in a State court submits to the jurisdiction of the court, is likewise well established. See, Haney v. Wilcheck et al., D.C.W.D. Va., 38 F.Supp. 345, 354, for a collection of authorities.

Without doubt, the purpose of the removal statute is to give a nonresident defendant, who has, against his will, been brought in a State court, the right to remove to the supposed unprejudiced forum of the Federal court, but to deny that right to a plaintiff or any party of like status, who has voluntarily invoked or willingly submitted to the jurisdiction of the State court.

In Lee v. Continental Ins. Co., C.C.D. Utah, 74 F. 424, 425, Judge Adams, said:

"However, my inclination is to adopt the conclusion that the amount involved in a counterclaim is a part of the subject-matter in dispute, within the meaning of the act of congress conferring jurisdiction upon the federal court, and that inclination is strongly fortified in the case at bar by the terms of the Utah statute, supra. This requires the defendant, in a case like that at bar, to present his counterclaim in the suit in which the original action is brought, or be forever barred from doing so. 'The matter in dispute,' to use the phraseology of the act of congress in question, is not only the $1,000 which the plaintiff sues for, but it is that which, of necessity, under the statute in question, must be litigated in connection with it. Especially is this so in a case like that at bar, where the defendant has exercised his option to assert his counterclaim prior to the transfer of this suit to this court. The motion to remand must therefore be denied."

In McKown v. Kansas & T. Coal Co., C.C.W.D.Ark., 105 F. 657, 658, Judge Rogers on January 3, 1901, long prior to the enactment of Section 1416 of Pope's Digest of the Statutes of Arkansas, held that a case similar to the one now under consideration should be remanded, but stated:

"In states where the defendant, if he had a counterclaim, is compelled, under the state code, to plead the same, a contrary rule may be essential to the ends of justice; but in this state a defendant is not compelled to plead his counterclaim. He may or may not do so, at his election."

The defendant had no alternative but to include in her answer in the State court her counterclaim, and included therein and in the petition for removal, seasonably filed are statements of every fact requisite to the jurisdiction of this court. The statute, Section 1416, supra, does not indirectly or collaterally affect her rights and liabilities but directly and positively precludes her from litigating her alleged claim against the plaintiff unless she asserts in the State court her counterclaim.

It is essential to the ends of justice and the protection of her rights as a nonresident that she be permitted as such nonresident defendant to remove the cause to this court.

Therefore an order is this day being entered denying the motion to remand. The exceptions of plaintiff are noted in the order.